No. 09-31015

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

K.P., M.D.; D.B., M.D.; and HOPE MEDICAL GROUP FOR WOMEN,
Plaintiffs - Appellants,

versus

LORRAINE LEBLANC, in her official capacity as Executive Director of the
Louisiana Patient's Compensation Fund Oversight Board; CLARK COSSE, in his
official capacity as a member of the Louisiana Patient's Compensation Fund
Oversight Board; MELANIE FIRMAN, in her official capacity as a member of the
Louisiana Patient's Compensation Fund Oversight Board; VINCENT CULOTTA,
in his official capacity as a member of the Louisiana Patient's Compensation Fund
Oversight Board; WILLIAM SCHUMACHER, in his official capacity as a member
of the Louisiana Patient's Compensation Fund Oversight Board; JOSEPH
DONCHESS, in his official capacity as a member of the Louisiana Patient's
Compensation Fund Oversight Board; DIONNE VIATOR, in her official capacity
as a member of the Louisiana Patient's Compensation Fund Oversight Board;
DANIEL LENNIE, in his official capacity as a member of the Louisiana Patient's
Compensation Fund Oversight Board; and MANUEL DEPASCUAL, in his official
capacity as a member of the Louisiana Patient's Compensation Fund Oversight
Board,
Defendants - Appellees.
_____

On Appeal from the United States District Court
for the Middle District of Louisiana

PRINCIPAL BRIEF OF PLAINTIFFS – APPELLANTS

William E. Rittenberg                Stephanie Toti
Rittenberg & Samuel, LLC            Center for Reproductive Rights
715 Girod Street                    120 Wall Street, 14th Floor
New Orleans, LA 70130               New York, NY 10005
(504) 524-5555                      (917) 637-3600
rittenberg@rittenbergsamuel.com     stoti@reprorights.org

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.    Plaintiffs-Appellants:

    a.    June Medical Services, LLC d/b/a Hope Medical Group for Women. This corporation has no parent corporation and no publicly owned corporation owns 10% or more of its stock.

    b.    K.P., M.D.

    c.    D.B., M.D.

2.    Counsel for Plaintiffs-Appellants:

    a.    The Center for Reproductive Rights

    b.    Stephanie Toti

    c.    Bonnie Scott Jones

    d.    Janet Crepps

    e.    Michelle Movahed

    f.    Rebecca Hart

g.    Rittenberg, Samuel and Phillips, LLC. This corporation has no parent corporation and no publicly owned corporation owns 10% or more of its stock.

h.    William E. Rittenberg

3.    Defendants-Appellees:

a.    Lorraine LeBlanc

b.    Clark Cosse

c.    Melanie Firman

d.    Vincent Culotta

e.    William Schumacher

f.    Joseph Donchess

g.    Dionne Viator

h.    Daniel Lennie

i.    Manuel DePascual

4.    Counsel for Defendants-Appellees:

a.    Roedel, Parsons, Koch, Blache, Balhoff & McCollister

b.    Carlton Jones, III

c.    David A. Woolridge, Jr.

5.    Counsel for State of Louisiana as *Amicus Curiae*:

a.    Angelique Duhon Freel

6.    Brittany Prudhome.  The outcome of this case will affect whether medical malpractice claims asserted by Ms. Prudhome against Plaintiffs will be subject to limitations of liability.

7.    Counsel for Brittany Prudhome:

   a.    Williams and Williams

   b.    Sandra M. Williams

   c.    Seale & Ross

   d.    Kevin P. Landreneau

8.    All health care providers in Louisiana that perform abortions.  The outcome of this case will affect whether Defendants may bar such health care providers from participating in the Louisiana Patient's Compensation Fund and obtaining the associated benefits for abortion-related medical malpractice claims.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiffs-Appellants respectfully request that this Court grant oral argument in the instant case because it raises constitutional issues of public importance.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES.......................................................... ii

STATEMENT REGARDING ORAL ARGUMENT........................................... v

TABLE OF AUTHORITIES................................................................................ viii

STATEMENT OF JURISDICTION.................................................................... 1

STATEMENT OF THE ISSUES......................................................................... 1

STATEMENT OF THE CASE............................................................................. 1

STATEMENT OF FACTS.................................................................................... 3

I.     Enactment of the Medical Malpractice Act....................................... 3

II.    Enactment of the Strict Liability Statute............................................ 6

III.   Participation in the Patient's Compensation Fund by Doctors K.P. and D.B........................................................................................................ 9

IV.   The Oversight Board's Denial of Benefits to Doctors K.P. and D.B. Based on the Strict Liability Statute........................................... 11

V.    Commencement of This Lawsuit....................................................... 14

VI.   Defendants' Actions Subsequent to Commencement of the Lawsuit........ 14

VII.  Defendants' Motions to Dismiss........................................................ 16

STANDARD OF REVIEW................................................................................. 18

SUMMARY OF THE ARGUMENT................................................................. 18

ARGUMENT........................................................................................................ 20

THE DISTRICT COURT ERRED IN DISMISSING THIS LAWSUIT BECAUSE THE LAWSUIT IS AUTHORIZED BY *EX PARTE YOUNG*........... 20

I.     Plaintiffs Allege an Ongoing Violation of Federal Law and Seek Relief that is Properly Characterized as Prospective............................... 21

II.    Defendants Plainly Have "Some Connection" with the Enforcement of the Strict Liability Statute as They Are Using it as the Basis for Denying Benefits to Plaintiffs.......................................................................... 25

III.   The Board Member Defendants' Delegation of Authority to Defendant LeBlanc Does Not Render Them Immune from Suit under the Eleventh Amendment Because, as a Matter of Law, They Retain Superseding Authority................................................................................................ 27

CONCLUSION.................................................................................................... 28

CERTIFICATE OF SERVICE.......................................................................... 30

# TABLE OF AUTHORITIES

*Cases*

*Ex parte Young*, 209 U.S. 123 (1908). ............................................................ *passim*

*Hans v. Louisiana*, 134 U.S. 1 (1890). .................................................................. 20

*Lane v. Halliburton*, 529 F.3d 548 (5th Cir. 2008). ............................................. 18

*Nelson v. University of Texas at Dallas*, 535 F.3d 318 (5th
    Cir. 2008). ..................................................................................................... 18, 21

*Okpalobi v. Foster*, 190 F.3d 337 (5th Cir. 1999), *vacated by*
    201 F.3d 353 (5th Cir. 2000) (*en banc*). ........................................................ 8

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (*en banc*). ......................... *passim*

*Okpalobi v. Foster*, 981 F. Supp. 977 (E.D. La. 1998), *rev'd on*
    *other grounds*, 244 F.3d 405 (5th Cir. 2001) (*en banc*)................................. 8

*United States v. Ferguson*, 211 F.3d 878 (5th Cir. 2000). ..................................... 25

*Verizon Maryland Inc. v. Public Service Commission of*
*Maryland*, 535 U.S. 635 (2002). ................................. 21, 21-22, 22, 24

*Women's Health Clinic v. State*, 02-0016 (La. App. 1 Cir.
    5/10/02);  825 So. 2d 1208; *writ denied*, 02-2002
    (La. 11/1/02); 828 So. 2d 586. ......................................................................... 9


*Constitutional Provisions*

U.S. Const. amend. XI. ............................................................................................ 20

U.S. Const. amend. XIV. ......................................................................................... 24

*Statutes*

La. Rev. Stat. Ann. § 9:2794............................................................................... 7, 8

La. Rev. Stat. Ann. § 9:2800.12 ............................................................. 7, 8, 12 n.2

La. Rev. Stat. Ann. §§ 40:1299.41-49 . ............................................................... 3, 4

La.  Rev. Stat. Ann. § 40:1299.41....................................................................... 4

La. Rev. Stat. Ann. § 40:1299.42.................................................................. 4, 4-5, 5

La. Rev. Stat. Ann. § 40:1299.44.............................................................. 4, 5, 27-28

La. Rev. Stat. Ann. § 40:1299.47........................................................................... 6

*Rules and Regulations*

Fed. R. Civ. P. 12(b)(1). ........................................................................................ 18

La. Sup. Ct. R. XII. ........................................................................................ 13 n.2

La. Admin. Code tit. 37, pt. III, § 105 . ................................................................ 4

La. Admin. Code tit. 37, pt. III, § 301. ................................................................ 4

La. Admin. Code tit. 37, pt. III, § 303. ................................................................ 28

La. Admin. Code tit. 37, pt. III, § 503. ................................................................ 4

La. Admin. Code tit. 37, pt. III, § 505. ................................................................ 5

La. Admin. Code tit. 37, pt. III, § 507. ................................................................ 5

La. Admin. Code tit. 37, pt. III, § 513. ................................................................ 4, 5

La. Admin. Code tit. 37, pt. III, § 515. ................................................................ 5

La. Admin. Code tit. 37, pt. III, § 705. ................................................................ 5

La. Admin. Code tit. 37, pt. III, § 1401. .............................................................. 6

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws, or treaties of the United States.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because the appeal is taken from a final decision of a district court of the United States.  The district court's judgment was entered on September 29, 2009.  A notice of appeal was filed on October 16, 2009.  This appeal is from a final order and judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

Whether the district court erred in holding that Plaintiffs' claims, which seek prospective relief against state officers sued in their official capacities for ongoing violations of federal law, are barred by the Eleventh Amendment.

## STATEMENT OF THE CASE

This case concerns the constitutionality of Louisiana Revised Statute § 9:2800.12, which creates a cause of action against health care providers for any harm to a pregnant woman or fetus that follows the performance of an abortion, regardless of whether the provider satisfied the applicable standard of care, and exempts the cause of action from Louisiana's medical malpractice reform regime.

1

That regimes enables health care providers to participate in a State-run medical malpractice insurance fund, which gives them access to affordable insurance coverage and provides them concomitant benefits including limitations on liability and the right to have claims against them screened by an expert review panel. Based on Louisiana Revised Statute § 9:2800.12, Defendants, who are the State officials responsible for administering the medical malpractice reform regime, have instituted a policy and practice of denying fund coverage and benefits to health care providers for all medical malpractice claims related to abortion.

The case was filed on November 16, 2007, by K.P., M.D. An amended complaint was filed on January 4, 2008, naming D.B., M.D., and Hope Medical Group for Women as additional plaintiffs. Plaintiffs assert that Louisiana Revised Statute § 9:2800.12 is unconstitutional on its face and as applied by Defendants. All Defendants are sued in their official capacities. Plaintiffs seek a declaration that the statute is unconstitutional and an injunction preventing Defendants from enforcing or otherwise relying on the statute in the future.

On February 12, 2008, Defendants Cosse, Firman, Culotta, Schumacher, Donchess, Viator, Lennie, and DePascual filed a motion to dismiss the case on the ground that they are immune from suit under the Eleventh Amendment. On July 22, 2008, Defendant LeBlanc filed a motion to dismiss on the same ground. While those motions were pending, the parties completed discovery and filed cross-

motions for summary judgment. The district court scheduled oral argument to be heard on all four dispositive motions on August 26, 2009. After hearing argument on the motions to dismiss, the district court granted those motions and dismissed the summary judgment motions as moot. The district court entered an order of dismissal on September 29, 2009. Plaintiffs appeal from that order.

## STATEMENT OF FACTS

### I.    Enactment of the Medical Malpractice Act.

In 1975, the State of Louisiana enacted the Medical Malpractice Act, establishing a comprehensive regime of medical malpractice reform. La. Rev. Stat. Ann. §§ 40:1299.41-49. Responding to a crisis in the market for medical malpractice insurance, the legislation had a twofold purpose: "[f]irst, to ensure that a stable and affordable market existed for malpractice insurance (and thereby keeping practitioners in the state); and second, to create a viable fund for compensating claimants while providing a statutory cap on total liability." Document entitled "A Brief History of the Louisiana Patient's Compensation Fund" [hereinafter "Brief History Document"], Exhibit 2 to the Deposition of Cheryl Jackson (July 18, 2008), Record Document No. 49-16, Record Excerpts Tab No. 14. To achieve those ends, the Medical Malpractice Act created the Louisiana Patient's Compensation Fund ("PCF" or "Fund"), a public fund to

3

compensate patients who have suffered injuries as a result of medical malpractice. *See* La. Rev. Stat. Ann. §§ 40:1299.41-49; La. Admin. Code tit. 37, pt. III, § 105; *see also* Brief History Document, Record Document No. 49-16, Record Excerpts Tab No. 14. The Fund is administered by the Louisiana Patient's Compensation Fund Oversight Board ("Oversight Board"). La. Rev. Stat. Ann. § 40:1299.44(D); La. Admin. Code tit. 37, pt. III, § 301. Defendant Lorraine LeBlanc is the Executive Director of the Oversight Board. First Amended Complaint at ¶ 10, Record Document No. 14, Record Excerpts Tab No. 5. The other Defendants are its members. *Id*. at ¶ 11.

All health care providers licensed or certified by the State of Louisiana are eligible to participate in the Fund.[1] *See* La. Rev. Stat. Ann. § 40:1299.41(A)(1); La. Admin. Code tit. 37, pt. III, § 503. Participation requires a health care provider to file an application form and "proof of financial responsibility" with the Oversight Board and to pay a surcharge assessed by the Oversight Board. *See* La. Rev. Stat. Ann. § 40:1299.42(A); La. Admin. Code tit. 37, pt. III, §§ 503, 513. Proof of financial responsibility consists of either proof of underlying medical malpractice insurance or $125,000 in cash or cash equivalents. *See* La. Rev. Stat. Ann. § 40:1299.42(E); La. Admin. Code tit. 37, pt. III §§ 505, 507. Health care

---

[1] The term "health care provider" is broadly defined by La. Rev. Stat. Ann. § 40:1299.41(A)(1) and encompasses all Plaintiffs in this action.

4

providers who provide the latter form of proof are referred to as "self-insured." *See* La. Rev. Stat. Ann. § 40:1299.42(E); La. Admin. Code tit. 37, pt. III § 507. Surcharges are assessed on an annual basis as follows: The Oversight Board classifies health care providers into rate classes based on the risk associated with their scope of practice, and each rate class is assessed a surcharge based on actuarial analysis of the claims history of groups of health care providers. *See* La. Rev. Stat. Ann. § 40:1299.44(A)(2); La. Admin. Code tit. 37, pt. III, § 705.

Health care providers who file the requisite application form and proof of financial responsibility and pay the requisite surcharge are deemed "qualified" and issued a "certificate of enrollment" by the Oversight Board. *See* La. Rev. Stat. Ann. § 40:1299.42(A); La. Admin. Code tit. 37, pt. III, §§ 513, 515. Qualified health care providers derive significant benefits from participation in the Fund. One such benefit is a limitation on medical malpractice liability. For any claim of medical malpractice, a qualified health care provider's personal liability is limited to a maximum of $100,000. *See* La. Rev. Stat. Ann. § 40:1299.42(B)(2). Damages in excess of $100,000 are paid by the Fund, and recovery is capped at $500,000 plus future medical expenses. *See* La. Rev. Stat. Ann. § 40:1299.42(B)(1).

Another benefit of participation in the Fund is the requirement that a "medical review panel" evaluate any medical malpractice claim against a qualified health care provider before a claimant can file a lawsuit. La. Rev. Stat. Ann. §

40:1299.47; La. Admin. Code tit. 37, pt. III, § 1401.  Medical review panels are comprised of three physicians and an attorney chairperson, who consider evidence presented by the parties and render an expert opinion about whether the qualified health care provider complied with the applicable standard of care.  La. Rev. Stat. Ann. § 40:1299.47.  The expert opinion rendered by the medical review panel is admissible in any subsequently filed lawsuit.  La. Rev. Stat. Ann. § 40:1299.47(H).

A third, important, benefit for enrollees in the Fund is access to medical malpractice insurance even when such insurance is not available to them on the commercial market, or is only offered on the commercial market at unaffordable rates.  By enabling providers to self-insure for their individual liability, enrollment in the Fund allows health care providers to insure themselves against medical malpractice liability regardless of conditions in the commercial market.  Providing such an affordable market for malpractice insurance was one of the primary goals of the Medical Malpractice Act.  *See* Brief History Document, Record Document No. 49-16, Record Excerpts Tab No. 14.

## II.    Enactment of the Strict Liability Statute.

In 1997, the State of Louisiana enacted Louisiana Revised Statute § 9:2800.12 ("Strict Liability Statute"), creating a new source of tort liability for physicians who perform abortions.  The Strict Liability Statute makes any person

who performs an abortion liable for "any damage occasioned or precipitated by the abortion," including "injuries suffered or damages occasioned by the unborn child." La. Rev. Stat. Ann. § 9:2800.12(A), (B)(2).  The Strict Liability Statute provides that "[t]he signing of a consent form by the mother prior to the abortion does not negate this cause of action, but rather reduces the recovery of damages to the extent that the content of the consent form informed the mother of the risk of the type of injuries or loss for which she is seeking to recover."  La. Rev. Stat. Ann. § 9:2800.12(C)(1).  It further provides that "[t]he laws governing medical malpractice or limitations of liability thereof provided in [the Medical Malpractice Act] are not applicable to this Section."  La. Rev. Stat. Ann. § 9:2800.12(C)(2).

The tort created by the Strict Liability Statute is distinct from the tort of medical malpractice, which is defined by Louisiana Revised Statute § 9:2794 ("Negligence Statute").  The Negligence Statute requires that, in a medical malpractice action against a licensed health care provider, the plaintiff must prove (1) the applicable standard of care; (2) that the defendant failed to meet the applicable standard of care; and (3) that the defendant's failure to meet the applicable standard of care was a proximate cause of injury to the plaintiff.  La. Rev. Stat. Ann. § 9:2794(A).  In contrast to the Negligence Statute, the Strict Liability Statute does not require a plaintiff to prove that the defendant breached the standard of care.  *Compare* La. Rev. Stat. Ann. § 9:2800.12 *with* La. Rev. Stat.

7

Ann. § 9:2794(A).    Rather, a plaintiff must prove only that the defendant performed an abortion and some damage to the pregnant woman or fetus was "occasioned or precipitated" by the abortion.  *See* La. Rev. Stat. Ann. § 9:2800.12.

Before the Strict Liability Statute took effect, a group of abortion providers challenged its constitutionality in a lawsuit filed in the U.S. District Court for the Eastern District of Louisiana.  The district court held the Strict Liability Statute unconstitutional and enjoined its enforcement, finding that the Statute is void-for-vagueness and imposes an undue burden on the right to seek a previability abortion.  *See Okpalobi v. Foster*, 981 F. Supp. 977 (E.D. La. 1998), *rev'd on other grounds*, 244 F.3d 405 (5th Cir. 2001) (*en banc*).  A panel of this Court affirmed the district court's judgment.  *Okpalobi v. Foster*, 190 F.3d 337 (5th Cir. 1999) ("*Okpalobi Panel Decision*"), *vacated by* 201 F.3d 353 (5th Cir. 2000) (*en banc*).

Sitting *en banc*, this Court subsequently vacated the panel's decision and reversed the judgment of the district court on jurisdictional grounds.  *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (*en banc*) ("*Okpalobi En Banc Decision*").  A majority of the *en banc* court held that the plaintiffs lacked standing to sue because the defendants, the Governor and Attorney General of Louisiana, were not the cause of the plaintiffs' alleged injuries and lacked the power to redress them.  *Id*. at 424-29.  In the court's view, the plaintiffs' injuries were caused only by possible lawsuits that might be brought by private parties and not by any action of

8

defendants, whom the court viewed as playing no role in the enforcement of the Statute. *Id.* at 426-27. Certain judges also expressed the view that the lawsuit was barred by the Eleventh Amendment. *See id.* at 410-24 (Jolly, J., joined by Davis, Jones, Smith, Barksdale, Garza, and DeMoss, JJ.). That view did not command a majority of the court, however. *See id.* at 429 (Higginbotham, J., concurring, joined by King, C.J.); *id.* at 432 (Benavides, J., concurring in part and dissenting in part); *id.* at 443 (Parker, J., dissenting, joined by Weiner, Stewart, and Dennis, JJ.).

Following the conclusion of the federal action, several of the *Okpalobi* plaintiffs filed a lawsuit in State court challenging the constitutionality of the Strict Liability Statute. The trial court declared the Statute unconstitutional. *See Women's Health Clinic v. State*, 02-0016, p. 2 (La. App. 1 Cir. 5/10/02); 825 So. 2d 1208, 1209-10; *writ denied*, 02-2002 (La. 11/1/02); 828 So. 2d 586. The intermediate appellate court reversed the trial court's judgment on jurisdictional grounds, following the reasoning in this Court's *en banc* decision. *Id.*

## III.  Participation in the Patient's Compensation Fund by Doctors K.P. and D.B.

Plaintiff Hope Medical Group for Women ("Hope Medical") is a medical facility in Shreveport, Louisiana, that is licensed by the State Department of Health and Hospitals to perform abortions. First Amended Complaint at ¶ 7, Record Document No. 14, Record Excerpts Tab No. 5. Plaintiff D.B., M.D., is a Board-

certified obstetrician-gynecologist licensed to practice medicine in the State of Louisiana.  Declaration of D.B., M.D. (Feb. 17, 2009) at ¶ 1, Record Document No. 49-9.  Dr. D.B. has performed abortions at Hope Medical since 1981 and has served as Medical Director of the facility for more than a decade.  *Id*. at ¶ 2.  Dr. D.B. has been enrolled in the Fund as a self-insured physician continuously since 1985.  *Id*. at ¶ 5.  Each and every year from 1985 to the present, Dr. D.B. has provided proof of financial responsibility to the Oversight Board, has paid the annual surcharge assessed by the Oversight Board, and has been issued a certificate of enrollment by the Oversight Board.  *Id*.

Between 1985 and 2005, three claimants requested the formation of medical review panels to review claims of medical malpractice arising from abortions performed by Dr. D.B. at Hope Medical:  Ida D. Scott by letter dated June 20, 1991; Krystal Farmer by letter dated May 6, 2002; and Consuela Rene Haney by letter dated January 7, 2005.  *Id*. at ¶ 7 and Ex. B.  In response to each request, the Oversight Board acknowledged that Dr. D.B. was a qualified health care provider for purposes of the claims and convened a medical review panel.  *Id*. at ¶ 7 and Ex. C.  Each medical review panel ultimately rendered a unanimous opinion in Dr. D.B.'s favor.  *Id*. at ¶ 7.

Plaintiff K.P., M.D., is an ophthalmic surgeon licensed to practice medicine in the State of Louisiana.  Declaration of K.P., M.D. (Feb. 18, 2009) at ¶¶ 1-2,

Record Document No. 49-8.  After completing an extensive training program, supervised by Dr. D.B., in the performance of first-trimester abortions, Dr. K.P. performed first-trimester abortions at Hope Medical from 2005-2007.  *Id*. at ¶¶ 2-4. Dr. K.P. was enrolled in the PCF as a self-insured physician continuously from May 9, 2005 to May 9, 2008.  *Id*. at ¶ 5.  Each and every year from 2005 to 2008, Dr. K.P. provided proof of financial responsibility to the Oversight Board, paid the annual surcharge assessed by the Oversight Board, and was issued a certificate of enrollment by the Oversight Board.  *Id*.

## IV.   The Oversight Board's Denial of Benefits to Doctors K.P. and D.B. Based on the Strict Liability Statute.

By letter dated June 26, 2007, an individual named Brittany Prudhome, who is not a party to this action, requested through her attorney the formation of a medical review panel to review a claim of medical malpractice arising from an abortion performed at Hope Medical.  Letter from Sandra M. Williams to Jerry Luke LeBlanc (June 26, 2007), Exhibit B to First Amended Complaint, Record Document No. 14-1, Record Excerpts Tab No. 6.  The request, which did not make any reference to the Strict Liability Statute, identified Dr. K.P., Dr. D.B., and Hope Medical as defendants.  *Id*.  By letter dated July 5, 2007, the Oversight Board advised Ms. Prudhome's attorney that Dr. K.P. was "non-qualified as it pertains to this complaint" and thus ineligible for a medical review panel.  Letter from Cheryl

Jackson to Sandra M. Williams (July 5, 2007), Exhibit 7 to Deposition of Cheryl Jackson (July 18, 2008), Record Document No. 49-16, Record Excerpts Tab No. 7. Subsequently, the Oversight Board informed Ms. Prudhome's attorney that Dr. D.B. was also ineligible for a medical review panel. Letter from Cheryl Jackson to Sandra M. Williams (July 25, 2007), Exhibit C to First Amended Complaint, Record Document No. 14-1, Record Excerpts Tab No. 8.

The Oversight Board based its decision to deny Ms. Prudhome's panel request on the Strict Liability Statute, which it interprets as rendering abortion providers non-qualified under the Medical Malpractice Act for all medical malpractice claims related to abortion and as prohibiting the Fund from paying any claims arising from an abortion.[2] Letter from David A. Woolridge to Stephanie

---

[2] Defendants interpret the Strict Liability Statute in a manner that is fundamentally different from Plaintiffs and the State of Louisiana as *amicus curiae*. Defendants argued below that the Statute requires proof of negligence by an abortion provider and that it is intended to supersede, rather than supplement, the generally applicable Negligence Statute for medical malpractice claims related to abortion. *See, e.g.,* Memorandum of Law in Support of Defs.' Motion for Summary Judgment at 35, Record Document No. 54-1; *see also* First Amended Complaint at ¶¶ 24-26, Record Document No. 14, Record Excerpts Tab No. 5. Plaintiffs, on the other hand, maintain that the Statute subjects abortion providers to strict liability for any injury to a pregnant woman or fetus that follows an abortion. That interpretation is the one most consistent with the plain language of the Statute and the prior observations of this Court. *See* La. Rev. Stat. Ann. § 9:2800.12; *Okpalobi En Banc Decision*, 244 F.3d at 409 (explaining that the Statute exposes "doctors to *unlimited* tort liability for any damage caused by the abortion procedure") (emphasis added). The State of Louisiana takes a different position from either party. It argued below that the Statute subjects abortion providers to liability for the intentional tort of battery, committed if a provider fails to provide certain information to a patient, regardless of whether the provider acted negligently. *See* Brief of *Amicus Curiae* at 6-7, Record Document No. 71. Although not relevant to the jurisdictional issue raised on this appeal, the nature of the liability created by the Statute is central to determination of the merits of Plaintiffs' constitutional claims. Accordingly, it would serve the interest of judicial economy for this Court to certify a question concerning the proper construction of the Strict Liability Statute to the Louisiana Supreme Court before remanding the case to the district court to render a decision on the merits of Plaintiffs' claims. *See* La. Sup. Ct. R. XII.

Toti (Nov. 7, 2007) [hereinafter "Woolridge Letter"], Exhibit E to First Amended Complaint, Record Document No. 14-1, Record Excerpts Tab No. 9; *see also* Deposition of John Thompson (Dec. 15, 2008) [hereinafter "Thompson Dep."] at 46:8-16, Record Document No. 49-17, Record Excerpts Tab No. 12; Deposition of Lorraine LeBlanc (Oct. 1, 2008) at 146:13-147:7 [hereinafter "LeBlanc Dep."], Document No. 49-15, Record Excerpts Tab No. 11.   The Oversight Board's attorney stated unequivocally: "[T]he allegations in the June 26, 2007 panel request center around Dr. [K.P.]'s performance of an abortion.   Under La. R.S. 9:2800.12C.(2), the Medical Malpractice Act, La. R.S. 40:1299.41 et seq ("MMA"), is not applicable to allegations involving an abortion.   As such, there is no PCF coverage for the allegations being made by Ms. Prudhomme against Dr. [K.P.]."   Woolridge Letter, Record Document No. 14-1, Record Excerpts Tab No. 9.

After receiving notice from the Oversight Board that Dr. K.P. was ineligible for the formation of a medical review panel, on July 23, 2007, Brittany Prudhome filed a medical malpractice action against Dr. K.P. and Hope Medical in State court.   First Amended Complaint at ¶ 27, Record Document No. 14, Record Excerpts Tab No. 5.  Hope Medical was served with the complaint in that action on July 24, 2007.   *Id*.   Dr. K.P. was served with the complaint in that action on October 15, 2008.   *Id*.

13

## V.    Commencement of This Lawsuit.

On November 16, 2007, Dr. K.P. filed this lawsuit against the members of the Oversight Board and its Executive Director in their official capacities, asserting that the Strict Liability Statute, both on its face and as applied by Defendants, is unconstitutional. The complaint sought declaratory and injunctive relief. After the Oversight Board informed Ms. Prudhome's attorney that Dr. D.B. was ineligible for a medical review panel, an amended complaint was filed on January 4, 2008, naming Dr. D.B. and Hope Medical as additional plaintiffs. The amended complaint also sought declaratory and injunctive relief.

## VI.    Defendants' Actions Subsequent to Commencement of the Lawsuit.

Nearly four months after the commencement of this lawsuit, on March 12, 2008, the Oversight Board agreed to convene a medical review panel to review Ms. Prudhome's claim. Letter from Cheryl Jackson to Sandra M. Williams (Mar. 12, 2008) [hereinafter "Reservation of Rights Letter"], Exhibit N to Declaration of K.P., M.D. (Feb. 18, 2009), Record Document No. 49-8, Record Excerpts Tab No. 10. However, the Oversight Board reserved the right to refuse payment of Ms. Prudhome's claim, *id.*, and it continues to maintain a policy and practice of denying Fund coverage and benefits to health care providers for abortion-related claims.[3]

---

[3]  The Oversight Board's decision to convene a medical review panel for Ms. Prudhome's claim did not represent a shift in policy; rather, it was a *sui generis* action that most likely resulted from Defendants' litigation strategy for this case. *See infra*, 14-15; LeBlanc Dep. at 146:13-147:7, Record Document No. 49-15, Record Excerpts Tab No. 11. Therefore, that action in no way eradicates the injuries caused to Plaintiffs by the Oversight Board's challenged policy and practice. To the contrary, Defendants' policy and practice continues to harm Plaintiffs in three ways: (1) Plaintiffs are still subject to the Oversight Board's denial of coverage and limitations of liability with respect to Ms. Prudhome's claim; (2) Plaintiffs are exposed to the risk of malpractice liability without Fund coverage or benefits with respect to the numerous other abortions they performed while paying into the Fund; and (3) Plaintiffs are unable to obtain Fund coverage and benefits for abortions that they perform in the future.

Subsequently, in May 2008, Hope Medical, through its insurance agent, contacted the Oversight Board to inquire about the procedures for enrolling in the Fund a physician who performs first-trimester abortions. Thompson Dep. at 19:13-21, Record Document No. 49-17, Record Excerpts Tab No. 12; Declaration of Kathaleen Pittman (Feb. 2009) at ¶¶ 10, 12, Record Document No. 49-10. The clinic was attempting to secure coverage through the Fund for itself and a physician it was training to perform first-trimester abortions. *Id*. at ¶¶ 9-10. The Executive Director of the Oversight Board, Defendant LeBlanc, responded to the insurance agent, via email, that the Strict Liability Statute "specifically excludes elective abortions from coverage under the med mal act." Emails exchanged by John Thompson, Lorraine LeBlanc, and Susan Gremillion (May 7, 2008-May 27, 2008) [hereinafter "Email Exchange"], Exhibit 3 to Deposition of John Thompson, Record Document No. 49-17, Record Excerpts Tab No. 13. The Administrative Manager of the Fund, Susan Gremillion, similarly responded via email, that: "It is my understanding that the Medical Malpractice Act does not cover abortions." *Id.* As a result, Hope Medical was unable to enroll itself or its trainee in the Fund. Thompson Dep. at 37:8-20, Record Document No. 49-17, Record Excerpts Tab No. 12.

## VII.  Defendants' Motions to Dismiss.

Defendants Cosse, Firman, Culotta, Schumacher, Donchess, Viator, Lennie,

15

and DePascual (collectively, "Board Member Defendants") filed a motion to dismiss this lawsuit on February 12, 2008, on the ground that they are immune from suit under the Eleventh Amendment because they lack sufficient connection with the enforcement of the Strict Liability Statute to fall within the *Ex parte Young* exception to the Eleventh Amendment. The Board Member Defendants acknowledged that the Strict Liability Statute imposes a "gatekeeping function" on the Oversight Board, but argued that they are not responsible for performing that function because they delegated it to Defendant LeBlanc. Memorandum in Support of Motion to Dismiss Filed by Board Member Defendants at 10 ("Though the plaintiffs are seeking an injunction preventing the individual Board Members from enforcing La. R.S. 9:2800.12, the Board Members have no role in the enforcement of La. R.S. 9:2800.12 or the rejection of medical review panel requests due to La. R.S. 9:2800.12(C)(2). Ms. LeBlanc, as the Executive Director of the PCF and through the delegation of LAC 37:III.303, is the state official charged with the gatekeeping function of La. R.S. 9:2800.12(C)(2).") [hereinafter "Defs.' Mem."], Record Document No. 27-1, Record Excerpts Tab No. 15. The Board Member Defendants did not assert any other grounds for their motion to dismiss. Defendant LeBlanc filed a motion to dismiss on July 22, 2008. She also asserted, as the sole ground for her motion, that she is immune from suit under the Eleventh Amendment because she lacks sufficient connection with the

16

enforcement of the Strict Liability Statute to fall within the *Ex parte Young* exception to the Eleventh Amendment.  Plaintiffs opposed both motions to dismiss.

The district court heard oral argument on the motions to dismiss on August 26, 2009.  Following argument, the court announced its ruling from the bench, granting both motions.  Transcript of Oral Argument (Aug. 26, 2009) at 18-19, Record Document No. 73, Record Excerpts Tab No. 4.  The court reasoned that: "The statute in this case does not charge these defendants with the obligation of enforcing anything. . . . [T]hey are not charged with or required to enforce anything, and have no connection to the enforcement or application of the statute at all."  *Id*. at 18.  On September, 29, 2009, the court entered an order of dismissal.  Order of Dismissal (Sept. 29, 2009), Record Document No. 75, Record Excerpts Tab No. 3.  It is from that order that Plaintiffs appeal.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a case should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support subject matter jurisdiction.  *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).  The court must take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff.  *Id*.  The court may find a plausible set of facts by

17

considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id*. This Court reviews a district court's ruling on a motion to dismiss *de novo*. *Nelson v. University of Texas at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008).

## SUMMARY OF THE ARGUMENT

The District Court erred in dismissing this lawsuit on Eleventh Amendment grounds because the lawsuit is authorized by *Ex parte Young*, which recognized an exception to the Eleventh Amendment for claims seeking prospective relief against state officers sued in their official capacities. The Supreme Court recently confirmed that, in determining whether the *Ex parte Young* doctrine authorizes a claim, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. Both of those conditions are met here: First, Plaintiffs allege that Defendants' policy and practice of using the Strict Liability Statute to exclude health care providers from the benefits of the Medical Malpractice Act for abortion-related malpractice claims constitutes an ongoing violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Second, Plaintiffs seek only prospective relief in the form of a

18

declaratory judgment that the Strict Liability Statute is unconstitutional on its face and/or as applied by Defendants and a permanent injunction restraining Defendants from denying the benefits of the Medical Malpractice Act to health care providers based on the Strict Liability Statute.

In addition, when a lawsuit seeks to enjoin the enforcement of a state statute, *Ex parte Young* requires that a state officer named as a defendant have some connection with the enforcement of the act. That requirement is plainly met here, where Defendants are using the Strict Liability Statute as a basis for denying benefits to Plaintiffs. Indeed, Defendants admit that the Oversight Board performs a "gatekeeping function" pursuant to the Strict Liability Statute, screening out claims related to abortion and denying health care providers the benefits of the Medical Malpractice Act for purposes of those claims.

Finally, the Board Member Defendants' claim that they are immune from suit under the Eleventh Amendment because they delegated their authority to enforce the Strict Liability Statute to Defendant LeBlanc lacks merit. As a matter of law, the Board Member Defendants retain superseding authority over the decisions of Defendant LeBlanc.

## ARGUMENT

### THE DISTRICT COURT ERRED IN DISMISSING THIS LAWSUIT

19

**BECAUSE THE LAWSUIT IS AUTHORIZED BY *EX PARTE YOUNG*.**

The Eleventh Amendment bars a state's own citizens, citizens of other states, and citizens of foreign countries from suing a state government in federal court. *See* U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). In *Ex parte Young*, however, the Supreme Court recognized an exception to the Eleventh Amendment for claims seeking prospective relief against state officers who have been sued in their official capacities. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908). It explained that, because states are incapable of authorizing conduct that violates federal law, any state officer who engages in such conduct is not acting as an agent of the state and is not entitled to share in the state's Eleventh Amendment immunity from suit. *Id.* at 159-60.

In determining whether the doctrine of *Ex parte Young* is applicable to a claim, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002); *Nelson*, 535 F.3d at 322-23. In addition, when a lawsuit seeks to enjoin the enforcement of a statute alleged to be unconstitutional, *Ex parte Young* requires that a state officer named as a defendant have "some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. That connection need not arise from the challenged statute itself,

20

though.    As the Supreme Court explained, "[t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Id*.

Here, the claims asserted by Plaintiffs against Defendants meet all of the criteria for application of the *Ex parte Young* doctrine.

## I.    Plaintiffs Allege an Ongoing Violation of Federal Law and Seek Relief that is Properly Characterized as Prospective.

The U.S. Supreme Court's most recent discussion of the *Ex parte Young* exception to the Eleventh Amendment came in *Verizon Maryland Inc.  See Verizon Maryland Inc.*, 535 U.S. at 635.  In that case, the plaintiff, a telecommunications carrier, alleged that an administrative decision rendered by Maryland's Public Service Commission, which required the plaintiff to pay reciprocal compensation to internet service providers for telephone calls, violated its rights under the federal Telecommunications Act.  *Id.* at 639-40.  It sued, *inter alia*, the members of the Public Service Commission in their official capacities, seeking declaratory and injunctive relief from the Commission's order.  *Id.*  The district court held that the lawsuit was barred by the Eleventh Amendment, and a divided panel of the Fourth Circuit affirmed.  *Id.* at 640.  Both courts rejected the argument that the lawsuit was authorized by *Ex parte Young*.  *Id.*  The Supreme Court reversed, holding that

"that doctrine of *Ex parte Young* permits [plaintiff's] suit to go forward against the state commissioners in their official capacities." *Id*. at 648.

The Supreme Court explained that, in determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Id.* at 645. It went on to caution lower courts against confusing the jurisdictional issue of whether *Ex parte Young* authorizes a case, with the merits of the case, stating: "[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Id*. at 646.

Here, as in *Verizon Maryland Inc.*, Plaintiffs allege an ongoing violation of federal law by Defendants. Specifically, Plaintiffs allege that, in reliance on the Strict Liability Statute, the Oversight Board is engaging in a policy and practice of excluding health care providers from the benefits of the Medical Malpractice Act for abortion-related malpractice claims. *See* First Amended Complaint at ¶¶ 24-26, Record Document No. 14, Record Excerpts Tab No. 5. The Oversight Board has manifested that policy and practice in numerous ways: First, it refused to convene a medical review panel to review Brittany Prudhome's claim against Drs. K.P. and D.B. and declared through its attorney that: "[T]he allegations in the June 26, 2007 panel request center around Dr. [K.P.]'s performance of an abortion. Under La.

22

R.S. 9:2800.12C.(2), the Medical Malpractice Act, La. R.S. 40:1299.41 et seq ("MMA"), is not applicable to allegations involving an abortion. As such, there is no PCF coverage for the allegations being made by Ms. Prudhomme against Dr. [K.P.]." Woolridge Letter, Record Document No. 14-1, Record Excerpts Tab No. 9. Later, it reserved the right to refuse payment of Ms. Prudhome's claim on the basis of the Strict Liability Statute. Reservation of Rights Letter, Record Document No. 49-8, Record Excerpts Tab No. 10. Most recently, Defendant LeBlanc told Hope Medical's insurance agent that health care providers could not obtain malpractice coverage from the Fund for the performance of abortions because: "[The Strict Liability Statute] specifically excludes elective abortions from coverage under the med mal act." Email Exchange, Record Document No. 49-17, Record Excerpts Tab No. 13. In addition, Defendants and their agents have reiterated throughout this litigation that the Strict Liability Statute bars Fund coverage for abortion-related malpractice claims. *See, e.g.*, LeBlanc Dep. at 146:13-147:7, Record Document No. 49-15, Record Excerpts Tab No. 11. Defendants' policy and practice of denying the benefits of the Medical Malpractice Act to health care providers who perform abortions constitutes an ongoing violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. U.S. Const. amend. XIV; *see* First Amended Complaint at ¶¶ 28-34, Record Document No. 14, Record Excerpts Tab No. 5.

Likewise here, as in *Verizon Maryland Inc.*, Plaintiffs seek only prospective relief. *Id.* at ¶¶ 36-39. That relief consists of a declaratory judgment that the Strict Liability Statute is unconstitutional on its face and/or as-applied by Defendants and a permanent injunction restraining Defendants from denying the benefits of the Medical Malpractice Act to health care providers based on the Strict Liability Statute. *Id.* Therefore, here, as in *Verizon Maryland Inc.*, "the doctrine of *Ex parte Young* permits [Plaintiffs'] suit to go forward against [Defendants] in their official capacities." *Verizon Maryland Inc.*, 535 U.S. at 648.

## II.     Defendants Plainly Have "Some Connection" with the Enforcement of the Strict Liability Statute as They Are Using it as the Basis for Denying Benefits to Plaintiffs.

Relying on this Court's decision in *Okpalobi*, Defendant LeBlanc argued below that she lacks sufficient connection with the enforcement of the Strict Liability Statute to satisfy the requirements of *Ex parte Young*. Her reliance on *Okpalobi* is misplaced for two reasons. First, the *en banc* Court made no holding on the Eleventh Amendment issue, having equally divided on that matter. *See Okpalobi En Banc Decision*, 244 F.3d at 437 n.6 (Benavides, J., concurring in part and dissenting in part); *id.* at 429 n.1 (Higginbotham, J., concurring); *id.* at 441 (Parker, J., dissenting). Accordingly, its decision does not constitute controlling

authority with respect to the Eleventh Amendment issue. *See United States v. Ferguson*, 211 F.3d 878, 885 (5th Cir. 2000) (noting that the opinion of an equally-divided *en banc* court does not disturb the prior precedent of the Circuit).

Second, *Okpalobi* is factually distinguishable from the case at bar. *Okpalobi* was a pre-enforcement challenge to the Strict Liability Statute; whereas, the present case challenges Defendants' ongoing enforcement of the Statute against Plaintiffs. *Compare Okpalobi En Banc Decision*, 244 F.3d at 409 *with supra*, at 11-15.    Moreover, the Defendants in *Okpalobi*—Louisiana's Governor and Attorney General—were connected to the Strict Liability Statute only through their general responsibility to ensure that all of the laws of the State are faithfully executed. *See Okpalobi En Banc Decision*, 244 F.3d at 425-26.    In contrast, the Defendants here—members of the Oversight Board and its Executive Director—have assumed specific enforcement responsibilities under the Statute. *See supra*, at 11-15.    Indeed, they admit that the Oversight Board performs a "gatekeeping function" pursuant to the Strict Liability Statute, screening out claims related to abortion and denying health care providers the benefits of the Medical Malpractice Act for purposes of those claims.    Defs.' Mem. at 10, Record Document No. 27-1, Record Excerpts Tab No. 15.    In the exercise of that gatekeeping function, the Oversight Board has engaged in a policy and practice, since July 25, 2007, of denying health care providers coverage for medical

malpractice claims related to abortion.  *See supra*, at 11-15.  That policy and practice led the Oversight Board to deny benefits to Drs. K.P. and D.B. in connection with Brittany Prudhome's claim and to advise Hope Medical that the Fund does not cover abortion-related claims.  *Id.*  Thus, there can be no doubt that Defendants have sufficient connection with the enforcement of the Strict Liability Statute to satisfy the requirements of *Ex parte Young*.  *See Ex parte Young*, 209 U.S. at 157.

The district court based its decision to dismiss the case on its determination that the Strict Liability Statute "does not charge these defendants with the obligation of enforcing anything."  Transcript of Oral Argument (Aug. 26, 2009), Record Document No. 73, Record Excerpts Tab No. 4.  Under *Ex parte Young*, however, it does not matter whether the Strict Liability Statute, itself, charges Defendants with the obligation of withholding benefits from Plaintifs and other abortion providers.  All that matters is that Defendants are, in fact, withholding such benefits based on the Statute.  *See Ex parte Young*, 209 U.S. at 157 ("The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.").

In sum, the district court erred in concluding that Defendants lack sufficient

connection with the enforcement of the Strict Liability Statute to satisfy *Ex parte Young*. Accordingly, this Court should reverse the judgment of the district court.

**III.  The Board Member Defendants' Delegation of Authority to Defendant LeBlanc Does Not Render Them Immune from Suit under the Eleventh Amendment Because, as a Matter of Law, They Retain Superseding Authority.**

In the court below, the Board Member Defendants erroneously claimed that they do not fall within the scope of the *Ex parte Young* exception to the Eleventh Amendment because they delegated their authority to enforce the Strict Liability Statute to Defendant LeBlanc, the Oversight Board's Executive Director. That claim is incorrect because, as a matter of law, the Board Member Defendants retain superseding authority over the decisions of the Executive Director. *See* La. Rev. Stat. Ann. § 40:1299.44(D)(2) (Any delegation of authority to the Executive Director is "subject to the superseding authority of the Board."); La. Admin. Code tit. 37, pt. III, § 303(C) ("In the exercise of [delegated] authority, the executive director shall be accountable to, and subject to the superseding authority of, the board."). In addition, the Executive Director holds office "at the pleasure of the board" and is both responsible and accountable to the board for the administration of the Fund. La. Admin. Code tit. 37, pt. III, § 303(A)-(B). Accordingly, regardless of whether the Board Member Defendants are personally involved in the day-to-day administration of the Fund, they retain ultimate supervisory authority

27

over its administration: they can override the Executive Director's decisions and terminate her employment. That level of authority makes the Board Member Defendants proper parties to this action under *Ex parte Young*. *See Ex parte Young*, 209 U.S. at 157.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully ask this Court to reverse the judgment of the district court.

Dated:  December 8, 2009

Respectfully submitted,

_____

Stephanie Toti
Center for Reproductive Rights
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3600
stoti@reprorights.org

William E. Rittenberg
Rittenberg, Samuel & Phillips, LLC
715 Girod Street
New Orleans, LA 70130
(504) 524-5555
rittenberg@rittenbergsamuel.com

**Attorneys for Plaintiffs-Appellants**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on December 8, 2009, a true and correct copy of the Principal Brief of Plaintiffs-Appellants was sent by United States Post Office Express Mail to the following individuals:

**Carlton Jones, III**
**David A. Woolridge, Jr.**
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809-7679

**Angelique Duhon Freel**
Louisiana Department of Justice, Civil Division
P.O. Box 94005
Baton Rouge, Louisiana 70804-9005

Dated:  December 8, 2009

 

 

_____
Stephanie Toti
The Center for Reproductive Rights
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3600