No. 09-31015

---

# UNITED STATES COURT OF APPEALS
# FIFTH CIRCUIT

---

**K.P., M.D.; D.B., M.D.; and HOPE MEDICAL GROUP FOR WOMEN**
**Plaintiffs - Appellants**

**VERSUS**

**LORRAINE LEBLANC, in her official capacity as Executive Director of the Louisiana Patient's Compensation Fund Oversight Board; CLARK COSSE, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; MELANIE FIRMAN, in her official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; VINCENT CULOTTA, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; WILLIAM SCHUMACHER, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; JOSEPH DONCHESS, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; DIONNE VIATOR, in her official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; DANIEL LENNIE, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; and MANUEL DEPASCUAL, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board.**
**Defendants – Appellees**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA
Civil Docket No. 07-0879**

---

# APPELLEE'S BRIEF

---

Carlton Jones, III (#25732)
ROEDEL, PARSONS, KOCH, BLACHE,
  BALHOFF & MCCOLLISTER
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809
Telephone: (225) 929-7033
*Counsel for the Defendants-Appellees*

<u>**CERTIFICATE OF INTERESTED PERSONS**</u>
<u>**CASE NO. 09-31015**</u>

Undersigned counsel of record certifies that the following listed persons and entities as described in Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  <u>PLAINTIFFS-APPELLANTS</u>

    a.    K.P., M.D.

    b.    D.B., M.D.

    c.    Hope Medical Group for Women (June Medical Services, L.L.C.)

2.  <u>ATTORNEYS FOR PLAINTIFFS-APPELLANTS</u>

    a.    William E. Rittenberg and Rittenberg, Samuel and Phillips, L.L.C.

    b.    Stephanie Toti, Bonnie Scott Jones, Michelle Movahed, Rebecca Hart and The Center for Reproductive Rights

3.  <u>DEFENDANTS-APPELLEES</u>

    a.    Lorraine LeBlanc

    b.    Clark Cosse

    c.    Melanie Firman

    d.    Vincent Culotta

    e.    William Schumacher

i

    f.      Joseph Donchess

    g.      Dionne Viator

    h.      Daniel Lennie

    i.      Manuel DePascual

4. <u>ATTORNEYS FOR DEFENDANTS-APPELLEES</u>

David A. Woolridge, Jr., Carlton Jones, III and Roedel, Parsons, Koch, Blache, Balhoff & McCollister

5. <u>ATTORNEYS FOR AMICUS CURIAE</u>

    a.      James D. "Buddy" Caldwell, Attorney General for the State of Louisiana

    b.      Angelique D. Freel, Assistant Attorney General, State of Louisiana

6. <u>OTHER PARTIES OF INTEREST</u>

    a.      Brittany Prudhome, medical malpractice claimant against plaintiffs in separate action

    b.      Sandra M. Williams, Kevin P. Landreneau and Seale & Ross, counsel for Brittany Prudhome

    c.      State of Louisiana and Attorney General for the State of Louisiana, James D. "Buddy" Caldwell

    d.      William St. John LaCorte, current Patient's Compensation Fund Board Member

    e.      Kent Guidry, current Patient's Compensation Fund Board Member

    f.      Katharine C. Rathbun, current Patient's Compensation Fund Board Member

g.      James E. Hritz, current Patient's Compensation Fund Board Member

## **STATEMENT REGARDING ORAL ARGUMENT**

Defendants-Appellees (hereinafter collectively referred to as the "PCF Defendants") suggest that this Court would benefit from oral argument in this matter.  Though arguments are straightforward, the primary issue before the court is a constitutional one that merits full legal argument and analysis.  The PCF Defendants further submits that oral argument may be beneficial to address the application of the Eleventh Amendment immunity doctrine to this case.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ....................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iv

TABLE OF CONTENTS .................................................................................... v

TABLE OF AUTHORITIES .............................................................................. vi

STATEMENT OF THE CASE ............................................................................ 1

STATEMENT OF FACTS .................................................................................. 2

   I.   The Underlying Medical Malpractice Claim ................................................... 2

   II.  The Composition and Function of the Louisiana Patient's
       Compensation Fund ..................................................................................... 3

   III. Plaintiffs and the Statute at Issue ................................................................. 6

SUMMARY OF THE ARGUMENT .................................................................. 10

ARGUMENT ..................................................................................................... 11

   I.   The *Ex Parte Young* Exception to Eleventh Amendment Immunity
       is Very Limited and Has Rare Application ................................................... 12

   II.  The Claims Against the PCF Defendants Fail the "Special Relation Test" .. 15

   III. *Ex Parte Young* Does Not Provide the Jurisdiction that the Plaintiffs Seek . 22

   IV. The Medical Review Panel is Moot and Therefore Cannot Serve
       as a Basis for the "Special Relation" Test ................................................... 24

CONCLUSION ................................................................................................... 26

CERTIFICATE OF SERVICE ........................................................................... 29

CERTIFICATE OF COMPLIANCE ................................................................... 30

# TABLE OF AUTHORITIES

**Page**

**Statutes**

La. C.C. Art. 2315 .................................................................................6

La. R.S. 9:2800.12 ........................................ 1, 2, 6, 7, 8, 11, 18, 21, 23, 26, 27, 28

**Cases**

1st Westco Corp. v. School Dist. of Philadelphia,
    6 F.3d 108 (3rd Cir. 1993) ............................................................ 19, 20

Bishop v. Oklahoma,
    333 Fed.Appx. 361 (10th Cir. 2009) ...............................................20

Burlington Northern & Santa Fe Ry. Co. v. Vaughn,
    509 F.3d 1085 (9th Cir. 2007) ........................................................17

Center for Individual Freedom v. Carmouche,
    449 F.3d 655 (5th Cir. 2006) ..........................................................24

Children's Healthcare is a Legal Duty, Inc. v. Deters,
    92 F.3d 1412 (6th Cir. 1996) ..........................................................18

Dailey v. Vought Aircraft Co.,
    141 F.3d 224 (5th Cir. 1998) ..........................................................25

Dombrowski v. Pfister,
    380 U.S. 479, 85 S.Ct. 1116 (1965) ...............................................14

Edelman v. Jordan,
    415 U.S. 651, 94 S.Ct. 1347 (1974) ...............................................12

Environmental Conservation Organization v. City of Dallas,
    529 F.3d 519 (5th Cir. 2008) ..........................................................25

Ex Parte Young,
  209 U.S. 123, 28 S.Ct. 441 (1908) ............... 13, 14, 15, 16, 17, 19, 20, 22, 26, 27

Fitts v. McGhee,
  172 U.S. 516, 19 S.Ct. 269 (1899) ....................................................15

Golden v. Louisiana Patient's Compensation Fund Oversight Board,
  40,801 (La.App. 2nd Cir. 3/8/06), 924 So.2d 459 ..........................................4, 25

Hero Lands Co. v. Texaco, Inc.,
  310 So.2d 93 (La. 1975) ..........................................................6

LaCoste v. Pendleton Methodist Hospital, L.L.C.,
  07-0008 (La. 9/5/07), 966 So.2d 519 .................................................23

Larkin v. U.S. Fidelity & Guaranty Co.,
  258 So.2d 132 (La.App. 2nd Cir. 1972)................................................6

Okpalobi v. Foster,
  190 F.3d 337 (5th Cir. 1999) .......................................................17

Okpalobi v. Foster,
  244 F.3d 405 (5th Cir. 2001) ................................................ 14, 16, 17, 18, 22, 23

Peters v. Allen Parish School Bd.,
  08-0323 (La.App. 3rd Cir. 11/5/08), 996 So.2d 1230..........................................6

Reproductive Health Services of Planned Parenthood
  of the St. Louis Region, Inc. v. Nixon,
  428 F.3d 1139 (8th Cir. 2005)......................................................18

Rode v. Dellarciprete,
  845 F.2d 1195 (3rd Cir. 1988)......................................................20

Smyth v. Ames,
  169 U.S. 466, 18 S.Ct. 418 (1898) ....................................................14

South Carolina Wildlife Federation v. Limehouse,
  549 F.3d 324 (4th Cir. 2008).......................................................16

United States v. Tex. Tech Univ.,

171 F.3d 279 (5th Cir. 1999) ................................................................................12

Warnock v. Pecos County, Tex.,
    88 F.3d 341 (5th Cir. 1996) ..........................................................................12

Will v. Michigan Dept. of State Police,
    491 U.S. 58, 109 S.Ct. 2304 (1989) ..............................................................12

# STATEMENT OF THE CASE

The Statement of the Case by Plaintiffs-Appellants' (hereinafter "Plaintiffs") is generally accurate. This case originated with a complaint against Lorraine LeBlanc, the Executive Director of the Oversight Board, and the individual members of the Oversight Board, seeking declaratory and injunctive relief as to the application of La. R.S. 9:2800.12. The district court granted Motions to Dismiss filed by the PCF Defendants on the basis of Eleventh Amendment immunity and dismissed all claims against them for lack of jurisdiction. The district court also dismissed all pending summary judgment motions as moot. Plaintiffs now seek the reversal of the district court's ruling.

# STATEMENT OF FACTS

Plaintiffs' Statement of Facts is generally accurate.  However, the Patient's Compensation Fund, the Medical Malpractice Act and La. R.S. 9:2800.12 warrant further explanation, as each of these has critical significance in the dismissal of their claims.

## I.     The Underlying Medical Malpractice Claim

Brittany Prudhome, a resident of Texarkana, Texas, was a patient of Hope Medical Group and K.P. on July 18, 2006.  As a result of the abortion procedure administered on that date, she claims to have suffered from a uterine tear and an incomplete abortion.  Ms. Prudhome signed an informed consent form on July 14, 2006, prior to the abortion procedure.

On or about July 23, 2007, Ms. Prudhome filed a lawsuit entitled *Brittany Prudhome v. June Medical Services, L.L.C., et al.*, Docket No. 513,752, First Judicial District Court, Parish of Caddo, State of Louisiana, seeking damages resulting from the abortion procedure.[1]  That lawsuit remains pending and no judgment or finding of fault or damages has been made.

---

[1] This information was made part of the record on the Motions for Summary Judgment filed by the parties.  The Motions to Dismiss were heard after the Motions for Summary Judgment had been filed.

Included among the plaintiffs in this action are the defendants in the Prudhome lawsuit.

II.    The Composition and Function of the Louisiana Patient's Compensation Fund

The Patient's Compensation Fund ("PCF") is a special fund, created by Act 817 of the 1975 Legislature, which is comprised of private monies held in trust as a custodial fund for the use, benefit, and protection of its private medical malpractice claimants and its private health care provider members, pursuant to La. R.S. 40:1299.44(A)(1).  The Oversight Board, as created and established by La. R.S. 40:1299.44(D), is responsible for, and has authority under law for the management, administration, operation and defense of the PCF in accordance with the Medical Malpractice Act, La. R.S. 40:1299.41, *et seq.*

When it comes to medical malpractice claims, the PCF has two basic functions: (1) the ministerial duty to commence the medical review panel, and (2) payment or defense of claims against qualified health care providers in excess of $100,000.

a.    The Medical Review Panel Process

Among the statutory responsibilities of the PCF under the Medical Malpractice Act is the administration of the medical review panel process required

by La. R.S. 40:1299.47.   Before a medical malpractice lawsuit against a qualified health care provider may be filed, it must be submitted to a medical review panel. La. R.S. 40:1299.47(A)(1)(a); La. R.S. 40:1299.47(B)(1)(a)(i).   Once the medical review panel request is made and the filing fee is timely paid, the PCF has only ministerial responsibility for the medical review panel process.   It has no decision-making authority and cannot dismiss a medical review panel absent express statutory authority.   See <u>Golden v. Louisiana Patient's Compensation Fund Oversight Board</u>, 40,801, p. 6 (La.App. 2nd Cir. 3/8/06), 924 So.2d 459, 463.

A portion of Plaintiffs' claims involves the medical review panel process. Initially, the PCF Defendants admit that no medical review panel was commenced on the Prudhome panel request.   However, after the commencement of this litigation, the PCF commenced a medical review panel for the claims against K.P. and D.B.   That medical review panel remains pending.   The PCF has fulfilled its responsibilities by commencing the medical review panel and Plaintiffs are not being deprived of the medical review panel process as a precedent to litigation of

the claims against them.[2]   Once the medical review panel process is complete, Ms. Prudhome may then proceed to trial on the lawsuit.

> b.    Limitation of Liability Under the Medical Malpractice Act

The Medical Malpractice Act allows health care providers, upon enrollment and payment of a surcharge, to qualify for limited liability for medical malpractice. It is a "pay to play" system and it is completely voluntary.  After a qualified health care provider either settles at the $100,000 level or is cast in judgment for damages in excess of $100,000, the liability of the PCF is triggered and the PCF bears liability for damages proven in excess of $100,000 and up to the statutory cap, $500,000, plus interest and future medical care and related benefits.  If a health care provider elects not to participate in the PCF, it is not required to do so, though it will not be entitled to the benefit of the cap on damages.

The liability issue is not yet before the PCF (or the Court for that matter) because there has not been judgment in excess of $100,000 or settlement with a qualified health care provider.

---

[2] In commencing the medical review panel, the PCF reserved its right to have a court determine whether the claims at issue constitute "malpractice" under the Medical Malpractice Act. Plaintiffs argue that the reservation of rights by the PCF somehow deprives them of their rights. This is a practice employed by the Oversight Board on occasions where a later judicial determination will be made as to qualification or enrollment.  At least one court has recognized the PCF's ability to reserve the right to seek judicial determination.  See Estate of Nicks v. Patient's Compensation Fund Oversight Bd., 05-1624, p. 13 (La.App. 1st Cir. 6/21/06), 939 So.2d 391, 400.

III.    <u>Plaintiffs and the Statute at Issue</u>

Plaintiffs herein are an abortion clinic, Hope Medical Group for Women, and two physicians who have performed abortion for the clinic, K.P. and D.B. They are seeking injunctive and declaratory relief against the PCF Defendants related to the enforcement of La. R.S. 9:2800.12 (sometimes referred to as the "Civil Action Statute").[3]

---

[3] As in other pleadings before this Court, Plaintiffs have identified the statute as a strict liability statute. When read *in pari materia* with all other Louisiana statues, it clearly is not. La. R.S. 9:2800.12(A), as an ancillary to the Civil Code provisions on quasi-offenses, provides that:

> Any person who performs an abortion is liable to the mother of the unborn child for any damage occasioned or precipitated by the abortion.

A strict liability analysis is not appropriate here, however, because the statute, read *in pari materia* with all of Louisiana tort law, requires proof of negligence. The foundation of Louisiana tort law, La. C.C. Art. 2315, provides that:

> Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

That provision "contemplates responsibility founded on fault, namely, negligence or intentional misconduct," and "fault" as used in La. C.C. Art. 2315 and Louisiana tort theory is synonymous with "negligence." <u>Hero Lands Co. v. Texaco, Inc.</u>, 310 So.2d 93, 97 (La. 1975); <u>Peters v. Allen Parish School Bd.</u>, 08-0323, p. 4 (La.App. 3rd Cir. 11/5/08), 996 So.2d 1230, 1233-1234; <u>Larkin v. U.S. Fidelity & Guaranty Co</u>., 258 So.2d 132 (La.App. 2nd Cir. 1972).

La. R.S. 9:2800.12(B)(2) clearly and unambiguously defines "damage" to mean:

> …all special and general damages which are recoverable in an intentional tort, negligence, survival, or wrongful death action for injuries suffered or damages occasioned by the unborn child or mother.

In other words, the "damage" referenced in the civil action proscribed by La. R.S. 9:2800.12(A)

A cause of action, unrelated to the Medical Malpractice Act, the PCF or the PCF Defendants, is established by La. R.S. 9:2800.12(A), La. R.S. 9:2800.12(B) and La. R.S. 9:2800.12(C)(1):

> A.    Any person who performs an abortion is liable to the mother of the unborn child for any damage occasioned or precipitated by the abortion, which action survives for a period of three years from the date of discovery of the damage with a peremptive period of ten years from the date of the abortion. — **this has nothing to do with the PCF Defendants**

> B.    For purposes of this Section:

> (1) "Abortion" means the deliberate termination of an intrauterine human pregnancy after fertilization of a female ovum, by any person, including the pregnant woman herself, with an intention other than to produce a live birth or to remove a dead unborn child. — **this has nothing to do with the PCF Defendants**

> (2) "Damage" includes all special and general damages which are recoverable in an intentional tort, negligence, survival, or wrongful death action for injuries suffered or damages occasioned by the unborn child or mother. — **this has nothing to do with the PCF Defendants**

> (3) "Unborn child" means the unborn offspring of human beings from the moment of conception through pregnancy and until termination of the pregnancy. — **this has nothing to do with the PCF Defendants**

> C.    (1) The signing of a consent form by the mother prior to the abortion does not negate this cause of action, but rather reduces the

---

is specifically defined to mean damages available under general tort principles in Louisiana — negligence, intentional tort, survival and wrongful death — all of which require a showing of a breach of the standard of care. Conspicuously absent from La. R.S. 9:2800.12(B)(2) is any reference to damages for strict, absolute or other liability without fault.

recovery of damages to the extent that the content of the consent form informed the mother of the risk of the type of injuries or loss for which she is seeking to recover. — **this has nothing to do with the PCF Defendants**

The PCF Defendants have nothing to do with the creation or enforcement of the civil action created by this statute.

To emphasize, La. R.S. 9:2800.12(A), (B) and (C)(1) involve:

- A private civil cause of action,

- Between a patient and an abortion provider (not the defendants),

- For damage occasioned by an abortion procedure.

La. R.S. 9:2800.12(C)(2) includes the only reference to the Medical Malpractice Act in the statute at issue, albeit indirectly, providing that:

The laws governing medical malpractice or limitations of liability thereof provided in Title 40 of the Louisiana Revised Statutes of 1950 are not applicable to this Section.

Plaintiffs have attempted to use La. R.S. 9:2800.12(C)(2) as the avenue for challenging the entirety of the statute and the civil cause of action established therein. Their claims are twofold:

1.    That they are being deprived of the limitation of liability of the Medical Malpractice Act, and

2.    That they have not been allowed to participate in the medical review panel process of La. R.S. 40:1299.47.

For the reasons discussed herein, the PCF Defendants urge this Court to affirm the judgment of the district court.

## SUMMARY OF THE ARGUMENT

The PCF Defendants submit that they, in their official capacities, are immune from the jurisdiction of the federal courts under the Eleventh Amendment. Plaintiffs failed to demonstrate that the PCF Defendants have sufficient connexity or connection to the enforcement of the Civil Action Statute such that the narrow exception of Ex Parte Young would apply to allow the jurisdiction of the federal courts. The lack of redressibility further demonstrates why the PCF Defendants do not have sufficient connexity to the enforcement of the Civil Acton Statute such that any exception to the immunity of the Eleventh Amendment would apply.

# **ARGUMENT**

Since the inception of this action, Plaintiffs have downplayed the fact that the Civil Action Statute has two distinct and entirely separate concepts: (1) a private civil cause of action between a patient and an abortion provider under La. R.S. 9:2800.12(A) with elements as defined by La. R.S. 9:2800.12(B) and La. R.S. 9:2800.12(C)(1), and (2) a statement that any such (private) claim is not covered by the Medical Malpractice Act.  The mere mention of Title 40 in La. R.S. 9:2800.12(C)(2) does not open the entire statute up for challenge, especially a private cause of action for patients which has nothing to do with the PCF Defendants in this case.[4]  The PCF Defendants submit that they, collectively, are immune from the jurisdiction of the federal courts under the Eleventh Amendment of the U.S. Constitution and that the district court correctly dismissed the claims against them for lack of jurisdiction.

---

[4] The plaintiffs' obvious goal is to have the Civil Action Statute as a whole declared unconstitutional.  Whether this Court looks at the statute as a whole or as two distinct concepts, Eleventh Amendment immunity should prevent this Court from reaching the issue of constitutionality.  But even if this Court finds that it has jurisdiction over the plaintiffs' claims related to La. R.S. 9:2800.12(C)(2), which is denied, it does not automatically open the door for jurisdiction to the entire statute.  The plaintiffs' must challenge the private civil cause of action element of La. R.S. 9:2800.12 against someone bringing a claim under it or someone actually trying to enforce it.

I.    The *Ex Parte Young* Exception to Eleventh Amendment Immunity is Very Limited and Has Rare Application

The Eleventh Amendment of the U.S. Constitution requires a distinct connection between a statute and a specific state actor before jurisdiction will attach.  Typically, the Eleventh Amendment bars actions brought against a state in federal court by its own citizens or citizens of another state, absent consent, waiver, or abrogation of the state's sovereign immunity.[5]  U.S. Constitution, Amendment XI; Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 1355 (1974). This immunity extends to state actors or agents when they are sued in their official capacities.  The U.S. Supreme Court has recognized that "a suit against a State official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304 (1989).  Eleventh Amendment immunity has a jurisdictional effect — it deprives a federal court of jurisdiction to hear a suit against a state.  United States v. Tex. Tech Univ., 171 F.3d 279, 286 n. 9 (5th Cir. 1999); Warnock v. Pecos County, Tex., 88 F.3d 341, 342 (5th Cir. 1996).  Thus, the Eleventh Amendment

---

[5] Under La. R.S. 13:5106(A), "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."  The State of Louisiana has not consented to be sued in this forum in this lawsuit and has not waived its sovereign immunity.

generally and typically prohibits claims against a state or a state official in a federal court.

In Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908), the United States Supreme Court recognized a very narrow exception to the Eleventh Amendment immunity enjoyed by a state or state official.  The exception, however, only applies in the very limited instance of a state official acting in violation of the U.S. Constitution, and requires a connection between the violative act and the state official over which jurisdiction is sought:

> If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

Ex Parte Young, 209 U.S. at 159-160, 28 S.Ct. at 454 (emphasis added).

In Ex Parte Young, the issue was whether the plaintiffs could invoke the jurisdiction of the federal courts to enjoin the enforcement of a state statute by the Attorney General of Minnesota.  The statute at issue specifically authorized the Attorney General to initiate proceedings against certain railroad companies. Because the Attorney General clearly had authority to enforce the statute, and the statute was being challenged, a very limited an exception to Eleventh Amendment

immunity was allowed.   It was clear that Mr. Young, as attorney general of Minnesota, had sufficient connection in the enforcement of the unconstitutional statute and was, in fact, threatening to use it.  As the U.S. Supreme Court noted in Dombrowski v. Pfister, 380 U.S. 479, 483, 85 S.Ct. 1116, 1119 (1965) the exception to Eleventh Amendment immunity "would be justified where state officers threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected [by] an unconstitutional act, violating the Federal Constitution."  (Emphasis supplied.)

Thus, in order for this jurisdictional exception to apply, the state official named as a party defendant must have "some connection with the enforcement of the act" in question or be "specially charged with the duty to enforce the statute" and be threatening to enforce that duty.  Ex Parte Young, 209 U.S. at 157, 28 S.Ct. at 453; Okpalobi v. Foster, 244 F.3d 405, 414-415 (5th Cir. 2001).  **If the state official named as a defendant does not have a connection to the enforcement of the challenged act, then the plaintiffs are merely naming that defendant as a representative of the state in violation of the Eleventh Amendment**.  Ex Parte Young, 209 U.S. at 157, 28 S.Ct. at 453.

The limited exception of Ex Parte Young was borne of two prior U.S. Supreme Court cases, namely Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418 (1898)

14

and <u>Fitts v. McGhee</u>, 172 U.S. 516, 19 S.Ct. 269 (1899).  In <u>Fitts</u>, the plaintiff

bought an action against the Attorney General and Governor of Alabama as to

certain legislation setting maximum tolls to be charged on a particular bridge.  In

dismissing the case for want of jurisdiction, the Court indicated that there must be

a "special relation" between the challenged statute and the state official over whom

jurisdiction is sought.  <u>Fitts</u>, 172 U.S. at 530, 19 S.Ct. at 274.  Because the

Alabama statute allowed a civil action by any aggrieved party against the

aggrieving party, the Court determined that neither the Attorney General nor the

Governor had been charged with any special duty to enforce the statute.  <u>Id.</u>

Without the "special relation," the federal court was without jurisdiction.


II.    <u>The Claims Against the PCF Defendants Fail the "Special Relation Test"</u>

The fiction of <u>Ex Parte Young</u> has a purpose — Eleventh Amendment

immunity is disregarded in limited instances to prevent a state official from acting

contrary to the U.S. Constitution.  But in this case, even if you tie the hands of the

PCF Defendants, the Civil Action Provision lives on.  Because an injunction will

not cure Plaintiffs' alleged harm, the "special relation" is not established and

Eleventh Amendment immunity controls.

This "special relation" requirement ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials. Ex Parte Young, 209 U.S. at 158-159, 28 S.Ct. at 453. It serves as a measure of proximity to and responsibility for the challenged state action, and **ensures that any federal injunction will be effective with respect to the underlying claim**. South Carolina Wildlife Federation v. Limehouse, 549 F.3d 324, 332-333 (4th Cir. 2008).

A number of cases have analyzed the "special relation" connexity between a named state official and a challenged statute under the Ex Parte Young exception to Eleventh Amendment immunity. Most notably, in Okpalobi, *supra*,[6] several physicians sued Governor Foster and Attorney General Ieyoub challenging the constitutionality of this very same Civil Action Statute. Following a lengthy analysis of Ex Parte Young and immunity under the Eleventh Amendment, this Court found that neither the Governor nor Attorney General was sufficiently connected to the enforcement of the statute, and held:

---

[6] Despite the plaintiffs' arguments to the contrary, the Fifth Circuit analyzed Eleventh Amendment immunity over the span of 13 pages of the opinion. Although the Court also dismissed the action on Article III grounds, the Court affirmatively held that "It is clear therefore to this en banc court, and we hold, alternatively, that the defendants in this case enjoy Eleventh Amendment immunity from this suit" and "we have made clear in this en banc opinion that the defendants in this case enjoy Eleventh Amendment immunity from this suit and that the *Ex parte Young* exception to the Eleventh Amendment cannot be applied under these facts." Okpalobi, 244 F.3d at 424, 429.

> [N]othing argued or cited by the dissent suggests that there is *any* enforcement connection between these defendants — the Governor and the Attorney General — and Act 825 that satisfies either of the requirements of Ex Parte Young. It is clear therefore to this en banc court, and we hold, alternatively, that the defendants in this case enjoy Eleventh Amendment immunity from this suit.

Okpalobi, 244 F.3d at 423-424 (emphasis in original).[7]

Consistent with the narrow exception carved by Ex Parte Young, this Court cautioned that the Ex Parte Young exception to the Eleventh Amendment is very limited:

> [T]he necessary fiction of Young requires that the defendant state official be acting, threatening to act or at least have the ability to act. It is this unconstitutional conduct, or at least the ability to engage in the unconstitutional conduct, that makes him no longer a representative of the sovereign. Without at least the ability to commit the unconstitutional act by the official defendant, the fiction cannot be sustained.

Okpalobi, 244 F.3d at 421. As the Ninth Circuit recently held:

> Although enforcement need not be imminent, the named officials must have "the requisite enforcement connection to" the challenged law for the Ex Parte Young exception to apply.

---

[7] The plaintiffs repeatedly cite the **vacated** panel decision in Okpalobi v. Foster, 190 F.3d 337 (5th Cir. 1999) as authority for their arguments. Since that decision was vacated and is of no precedential value, this Court should disregard the plaintiffs' rampant citation of invalid authority. **The only authoritative decision in that particular case is Okpalobi v. Foster, 244 F.3d 405 (5th Cir. 2001), in which this Court dismissed the plaintiffs' claims for lack of jurisdiction.**

Burlington Northern & Santa Fe Ry. Co. v. Vaughn, 509 F.3d 1085, 1092 (9th Cir. 2007).

The Okpalobi case is particularly relevant since it involves a challenge to the very same statute. Though the parties have changed, the analysis is the same. Neither Ms. LeBlanc nor the PCF have acted or threatened to act on the civil cause of action created by these particular provisions of La. R.S. 9:2800.12. As state actors, they simply have nothing to do with a civil cause of action — that is within the domain of claimants and the court system.

A similar result was reached in Children's Healthcare is a Legal Duty, Inc. v. Deters, 92 F.3d 1412 (6th Cir. 1996). In Children's Healthcare, the plaintiffs filed suit against the Ohio Attorney General challenging a statute exempting spiritual healers from a duty to provide adequate care in the treatment of children. The challenge was waged under the First, Fifth and Fourteenth Amendments. Since Ohio law delegated enforcement of the challenged statutes to local prosecutors, and since the Attorney General had not threatened to enforce the challenged statute and had no connection to its enforcement, the Sixth Circuit held that the Attorney General had Eleventh Amendment immunity and directed that the claims against him be dismissed. Children's Healthcare, 92 F.3d at 1416. See also Reproductive Health Services of Planned Parenthood of the St. Louis Region, Inc.

v. Nixon, 428 F.3d 1139 (8th Cir. 2005) (Attorney General had no connection to enforcement of challenged statute and therefore enjoyed Eleventh Amendment immunity).

In 1st Westco Corp. v. School Dist. of Philadelphia, 6 F.3d 108 (3rd Cir. 1993), a contractor sued the Attorney General and Secretary of Education for the State of Pennsylvania challenging a state statute permitting only Pennsylvania residents to work on Pennsylvania public school projects.  Under the statute, a construction contract could be canceled, or payments could be withheld, for failure to comply with the residency requirement.  The district court denied a motion to dismiss by the state officials.  On review, the Third Circuit found that the statute vested the Philadelphia school district with the authority over administering construction contracts and enforcing the statute.  The court determined that the general authority of the Attorney General and Secretary of Education was not enough to allow jurisdiction:

> [A]lthough Ex Parte Young allows a party to be joined to a lawsuit based solely on his or her general obligation to uphold the law, it is appropriate only in cases in which there is a "real, not ephemeral, likelihood or realistic potential that the connection will be employed against the plaintiff's interests."

1st Westco Corp., 6 F.3d at 114, *citing* Rode v. Dellarciprete, 845 F.2d 1195, 1208

(3rd Cir. 1988). The Third Circuit further explained the reason for declining to

expand the jurisdiction under Ex Parte Young:

> If we were to allow [the plaintiff] to join the Commonwealth Officials
> in this lawsuit based on their general obligation to enforce the laws of
> the Commonwealth, we would quickly approach the nadir of the
> slippery slope; each state's high policy officials would be subject to
> defend every suit challenging the constitutionality of any state statute,
> no matter how attenuated his or her connection to it. Such a result is
> undesirable, a drain on resources of time and money, and contrary to
> Rode.

1st Westco Corp., 6 F.3d at 116. See also Bishop v. Oklahoma, 333 Fed.Appx.

361 (10th Cir. 2009) (the generalized duty of the Attorney General and Governor

to enforce state laws defining marriage was insufficient to establish a causal

connection between the executive officials' actions and the alleged due process and

equal protection injury to lesbian couples being prevented from marrying).

These cases show that it is not enough that the state official have some

supervisory responsibilities or even some tangential relationship to the statute at

issue — the state official named as a defendant must have a direct connection with

the enforcement of the statute at issue. Moreover, there must be some expected

imminent act by the named official. Thus, Ex Parte Young is very limited in scope

and application. A state actor must be closely connected to the enforcement of a

particular state statute of questionable constitutionality and must be threatening and have to capability to act.

Under the facts of this case, there is no "special relation" between the Civil Action Statute and the PCF Defendants to provoke a waiver of Eleventh Amendment immunity. The plaintiffs would have this Court believe that the PCF and Ms. LeBlanc decide what constitutes malpractice under the Medical Malpractice Act. To the contrary, neither the PCF nor Ms. LeBlanc is the final arbiter of what is considered "malpractice" under Louisiana law. The courts are the final authority. When litigation proceeds under the Medical Malpractice Act, it is the court, not Ms. LeBlanc or the PCF, that determines whether a claim is malpractice, whether a provider is qualified, or whether a claimant is entitled to damages from the PCF. Likewise, it is the court, sitting in adjudication over a justiciable controversy, which can and should determine if a particular claim is "malpractice" or if it falls outside the scope of the Medical Malpractice Act.

The plaintiffs have not, and cannot, show where the PCF Defendants, or an one of them, even has the ability to somehow bring or suppress the cause of action represented by La. R.S. 9:2800.12(A), La. R.S. 9:2800.12(B) and La. R.S. 9:2800.12(C)(1). Likewise, the PCF Defendants have absolutely no authority over the filing of a civil action under the Civil Action Provision. The PCF Defendants

can neither stop nor allow a claimant from filing a claim. Once such a lawsuit is filed, if ever one is filed, the PCF Defendants will play no role since it is a private civil matter between a woman seeking an abortion and an abortion provider. There is no enforcement connection between the Civil Action Provision and any of the PCF Defendants. As such, there is no "special relation" and the exception of Ex Parte Young clearly does not apply.

III.    *Ex Parte Young* Does Not Provide the Jurisdiction that the Plaintiffs Seek

In Okpalobi, this Court recognized, as the PCF Defendants have indicated here, that:

> [T]here is no redress for the claimed injury resulting from the application of this unconstitutional statute-that is, the filing and prosecution of a private civil action under Act 825-that can be provided by these defendants…

> * * * *

> …it is not the [defendant] who inflicts the claimed injury - **it is the private plaintiff, bringing a private lawsuit under Act 825, who *causes* the injury of which the plaintiffs complain**.

Okpalobi, 244 F.3d at 428 (emphasis supplied). This Court further explained, in language that equally applies to the PCF Defendants here, that:

> [T]he injury alleged by the plaintiffs is not, and cannot possibly be, *caused* by the defendants-that is, these defendants will not file and prosecute a cause of action under Act 825 against these plaintiffs; and

> that their injury cannot be *redressed* by these defendants-that is, **these defendants cannot prevent purely private litigants from filing and prosecuting a cause of action under Act 825 and cannot prevent the courts of Louisiana from processing and hearing these private tort cases**… [The dissent] continues to confuse the coercive impact of the statute itself and the ability-or the absence of ability-of the Governor and Attorney General to cause or redress the impact of the statute on the plaintiffs.

Okpalobi, 244 F.3d at 427 (emphasis supplied).  See also Women's Health Clinic, 02-16 at p. 8, 825 So.2d at 1212.

It is the courts and private litigants who have "enforcement" authority under the Civil Action Statute.  It is also the courts, and not the PCF Defendants, who determine whether a claim is "malpractice" under the Medical Malpractice Act or whether it falls within the scope of the Civil Action Statute.  See LaCoste v. Pendleton Methodist Hospital, L.L.C., 07-0008, p. 7 (La. 9/5/07), 966 So.2d 519, 524.  None of the PCF Defendants are charged with any of the decisions for which the Plaintiffs seek injunctive relief.

It is significant that none of the defendants are private citizens.  None of them can bring an action under La. R.S. 9:2800.12(A) in his or her official capacity.  The cause of action recognized by La. R.S. 9:2800.12 is between an abortion provider and his or her patient, and the only proper forum for a challenge to the private civil cause of action is in a private civil cause of action where such a claim is brought.

In this case, these Plaintiffs are involved in civil litigation in the First Judicial District Court, Parish of Caddo, related to the underlying tort claims. That forum, if any, would be the appropriate place to challenge the constitutionality of the civil action against abortion providers. The PCF Defendants play no role in the underlying tort action, even in a medical malpractice case, and have nothing to do with the viability of the cause of action, the burden of proof sufficient to prevail, or the damages to be awarded to a successful plaintiff.

IV.     The Medical Review Panel is Moot and Therefore Cannot Serve as a Basis for the "Special Relation" Test

Plaintiffs should not be able to use the medical review panel issue as their lifeline to jurisdiction in this case. Shortly after this litigation commenced, the PCF convened a medical review panel for the claims against the two qualified health care provider plaintiffs. Those two plaintiffs are not being deprived of the medical review panel process as a precedent to litigation of the claims against them. They are currently engaged in the process, and the PCF cannot take that away.

As a general rule, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." Center for Individual Freedom v. Carmouche, 449 F.3d 655, 661 (5th Cir. 2006).

Mootness hinges upon whether "the parties maintain a concrete interest in the outcome and effective relief is available to remedy the effect of the violation." Environmental Conservation Organization v. City of Dallas, 529 F.3d 519, 527 (5th Cir. 2008); Dailey v. Vought Aircraft Co., 141 F.3d 224, 227 (5th Cir. 1998).

While the issue before the Court is Eleventh Amendment immunity, the issue of mootness is directly related to the "special relation" test. This is not a case where a continued or future violation is possible. The PCF cannot now rescind the medical review panel as long as the participants comply with the procedures required by law. See Golden, 40,801 at p. 6, 924 So.2d at 463 ("The PCF Board is granted no authority in the law to issue a 'declaration' stopping the process [and] … we therefore find no standing for the PCF Board to contest Golden's claim.")

The medical review panel process is now in the hands of the participants, including Plaintiffs, and cannot be undone. Thus, Plaintiffs are not suffering any damage or deprivation of rights as the result of any action or inaction by the PCF. The medical review panel having commenced, there is no deprivation of rights. Even when the medical review panel is complete, it is the courts, not the PCF Defendants, who will determine whether a claim is "malpractice" and subject to the Medical Malpractice Act. None of the PCF Defendants have that authority

and, in turn, are not qualified state actors for the purpose of any exception to Eleventh Amendment immunity.

The damage, if any, suffered by Plaintiffs as a result of the Civil Action Statute will come in the tort action in Shreveport.  At this point in time, Plaintiffs are not suffering any damage or deprivation of rights as the result of any action or inaction by the PCF Defendants.  The PCF has nothing to do with the Prudhome claim until there is a judgment against or settlement by the qualified health care provider, at which time the court will determine if it is malpractice.

## CONCLUSION

Plaintiffs cannot simply use the PCF Defendants as their vehicle to attack the constitutionality of La. R.S. 9:2800.12 as a whole.  The U.S. Supreme Court has made it clear that the <u>Ex Parte Young</u> exception to the Eleventh Amendment is very narrow, and is only to be applied where a state official has threatened or is threatening to enforce an unconstitutional statute.  Neither the PCF Defendants nor any one of them has, or can, enforce the civil action provided under La. R.S. 9:2800.12(A), La. R.S. 9:2800.12(B) and La. R.S. 9:2800.12(C)(1).  Only a claimant may bring a civil action and the PCF Defendants have absolutely no control over whether such action is brought or the end result.

But even as to La. R.S. 9:2800.12(C)(2), the ultimate decision as to whether a claim is "malpractice" is within the sole realm of the courts.   The PCF Defendants are not the final arbiters of "malpractice" in Louisiana — the courts are, specifically the court of proper jurisdiction and proper venue as to the litigants of the particular case.   The PCF Defendants are not exercising or threatening to exercise control such that the Ex Parte Young exception to the Eleventh Amendment will apply.

Further, under the Medical Malpractice Act, now that a medical review panel has been established, the PCF will have no further involvement in the claims of Brittany Prudhome against these Plaintiffs unless and until there is a settlement or judgment as to the claims.   There is nothing that the PCF Defendants can or cannot do at this time that will affect the claims brought against Plaintiffs by Brittany Prudhome.   Accordingly, the claims against Ms. LeBlanc should be dismissed for lack of jurisdiction under the Eleventh Amendment of the U.S. Constitution.

There is no "special relation" on the part of the PCF Defendants as to the Civil Action Statute.   The PCF Defendants have no involvement whatsoever in the establishment of a civil action under La. R.S. 9:2800.12(A), the definitions established by La. R.S. 9:2800.12(B) or the consent form issue raised by La. R.S.

9:2800.12(C)(1).    The removal of such claims from the scope of the Medical Malpractice Act under La. R.S. 9:2800.12(C)(2) does not change the private nature of the claim under the Civil Action Statute.

Therefore, the PCF Defendants urge this Court to affirm the judgment of the district court, dismissing the Plaintiffs' action against them.

By Attorneys,

ROEDEL, PARSONS, KOCH, BLACHE,
    BALHOFF & MCCOLLISTER, A L.C.
8440 Jefferson Hwy., Suite 301
Baton Rouge, LA  70809-7652
Telephone (225) 929-7033
Facsimile (225) 928-4925


_____
CARLTON JONES, III (#25732)

## <u>CERTIFICATE OF SERVICE</u>

I, Carlton Jones, III, hereby certify that the Appellee's Brief of the Louisiana Patient's Compensation Fund has been served upon the United States Court of Appeals for the Fifth Circuit and all counsel of record on this 25th day of January, 2010 by regular United States mail.  The following counsel of record were served a hard copy and an electronic copy of the Appellee's Brief by regular United States mail, preaddressed and postage prepaid, on this 25th day of January, 2010:

William E. Rittenberg                     Stephanie Toti
Rittenberg & Samuel, LLC                  Center for Reproductive Rights
715 Girod Street                          120 Wall Street, 14th Floor
New Orleans, LA 71030                     New York, NY
(503) 524-5555                            (917) 637-3600
rittenberg@rittenbergsamuel.com           stoti@reprorights.org


                                _____
                                CARLTON JONES, III (#25732)

## <u>CERTIFICATE OF COMPLIANCE</u>

This Appellee's Brief of the Louisiana Patient's Compensation Fund complies with the type and volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 6,649 words, including the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure (except the addendum).

This Appellee's Brief complies with the typeface, font and style requirements of Rules 32(a)(5) and 32(a)(6) of the of the Federal Rules of Appellate Procedure as this brief has been prepared in Microsoft Word 2007 in 14 point font using Times New Roman style.

By Attorneys,

ROEDEL, PARSONS, KOCH, BLACHE,
   BALHOFF & MCCOLLISTER, A L.C.
8440 Jefferson Hwy., Suite 301
Baton Rouge, LA  70809-7652
Telephone (225) 929-7033
Facsimile (225) 928-4925


_____
CARLTON JONES, III (#25732)