## No. 09-31015

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**K.P., M.D.; D.B., M.D.; and HOPE MEDICAL GROUP FOR WOMEN,**
**Plaintiffs - Appellants,**

**versus**

**LORRAINE LEBLANC, in her official capacity as Executive Director of the
Louisiana Patient's Compensation Fund Oversight Board; CLARK COSSE, in his
official capacity as a member of the Louisiana Patient's Compensation Fund
Oversight Board; MELANIE FIRMAN, in her official capacity as a member of the
Louisiana Patient's Compensation Fund Oversight Board; VINCENT CULOTTA,
in his official capacity as a member of the Louisiana Patient's Compensation Fund
Oversight Board; WILLIAM SCHUMACHER, in his official capacity as a member
of the Louisiana Patient's Compensation Fund Oversight Board; JOSEPH
DONCHESS, in his official capacity as a member of the Louisiana Patient's
Compensation Fund Oversight Board; DIONNE VIATOR, in her official capacity
as a member of the Louisiana Patient's Compensation Fund Oversight Board;
DANIEL LENNIE, in his official capacity as a member of the Louisiana Patient's
Compensation Fund Oversight Board; and MANUEL DEPASCUAL, in his official
capacity as a member of the Louisiana Patient's Compensation Fund Oversight
Board,**
**Defendants - Appellees.**

_____

**On Appeal from the United States District Court
for the Middle District of Louisiana**

## REPLY BRIEF OF PLAINTIFFS – APPELLANTS

**William E. Rittenberg**          **Stephanie Toti**
**Rittenberg & Samuel, LLC**       **Center for Reproductive Rights**
**715 Girod Street**               **120 Wall Street, 14th Floor**
**New Orleans, LA 70130**          **New York, NY 10005**
**(504) 524-5555**                 **(917) 637-3600**
rittenberg@rittenbergsamuel.com    stoti@reprorights.org

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................... iii

ARGUMENT......................................................................................... 1

I.    Defendants are not Entitled to Eleventh Amendment Immunity............... 1

    A.    Defendants' Arguments Ignore the Fact That They are Actively Enforcing the Strict Liability Statute against Plaintiffs...................... 1

    B.    Defendants' Enforcement Connection Extends to the Whole Strict Liability Statute................................................................................ 2

    C.    Defendants Mischaracterize the Relevant Eleventh Amendment Jurisprudence........................................................................... 4

II.   Plaintiffs' Claims are not Moot.................................................. 6

    A.    Plaintiffs Suffer Ongoing Injuries as a Result of Defendants' Actions Apart from the Denial of Ms. Prudhome's Panel Request.... 7

    B.    Voluntary Cessation of a Challenged Practice Does not Render a Lawsuit Moot.......................................................................... 9

CONCLUSION.................................................................................. 12

CERTIFICATE OF SERVICE.......................................................... 14

# TABLE OF AUTHORITIES

***Cases***

*Dailey v. Vought Aircraft Co.*, 141 F.3d 224 (5th Cir. 1998) ............................... 7, 9

*Ex parte Young*, 209 U.S. 123 (1908) ............................................................. 2, 4, 5

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
    528 U.S. 167 (2000)........................................................................ 10, 11, 12

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (*en banc*) ................................. 5-6

*Parents Involved in Community Schools v. Seattle School District No. 1*,
    551 U.S. 701 (2007)........................................................................ 9-10, 12

*Sandoz v. Cingular Wireless LLC*, 553 F.3d 913 (5th Cir. 2008)............................ 7

*United States v. Ferguson*, 211 F.3d 878 (5th Cir. 2000) ........................................ 6

*United Transportation Union v. Foster*, 205 F.3d 851 (5th Cir. 2000) .............. 2 n.1


***Statutes***

La. Rev. Stat. Ann. § 9:2800.12  .............................................................2 n.1, 2-3, 4

La. Rev. Stat. Ann. §§ 40:1299.41-49 ............................................................. 2 n.1

## <u>ARGUMENT</u>

**I.     Defendants are not Entitled to Eleventh Amendment Immunity.**

> **A.     Defendants' Arguments Ignore the Fact that They are Actively Enforcing the Strict Liability Statute against Plaintiffs.**

Defendants' claim that they lack sufficient connection with enforcement of the Strict Liability Statute to satisfy *Ex Parte Young* utterly ignores the fact that Defendants are actively enforcing the Statute against Plaintiffs.  Defendants admit that they perform a "gatekeeping function" pursuant to the Strict Liability Statute, screening out abortion providers from participating in the Fund and enjoying its accompanying benefits for purposes of claims related to abortion.  Memorandum in Support of Motion to Dismiss filed by Board Member Defendants [hereinafter "Defs.' Mem."] at 10, Record Document No. 27-1, Record Excerpts Tab. No. 15.  In the exercise of that gatekeeping function, the Oversight Board denied Dr. K.P. and Dr. D.B. coverage for Ms. Prudhome's claim and has expressed its policy and practice of denying Plaintiffs and other abortion providers coverage for all claims related to abortion.  Letter from Cheryl Jackson to Sandra M. Williams (July 5, 2007), Exhibit 7 to Deposition of Cheryl Jackson (July 18, 2008), Record Document No. 49-16, Record Excerpts Tab. No. 7; Letter from Cheryl Jackson to Sandra M. Williams (July 25, 2007), Exhibit C to First Amended Complaint, Record Document No. 14-1, Record Excerpts Tab No. 8.  The Oversight Board has

1

also advised Hope Medical, though its insurance agent, that the Strict Liability Statute prevents the Fund from covering abortion-related claims. Emails exchanged by John Thompson, Lorraine LeBlanc, and Susan Gremillion (May 7, 2008—May 27, 2008) [hereinafter "Thompson Emails"], Exhibit 3 to Deposition of John Thompson (Dec. 15, 2008), Record Document No. 49-17, Record Excerpts Tab No. 13. Accordingly, there can be no doubt that Defendants have the requisite connection with enforcement of the Strict Liability Statute to satisfy the requirements of *Ex parte Young*. *See Ex parte Young*, 209 U.S. 123, 157 (1908).

## B. Defendants' Enforcement Connection Extends to the Whole Strict Liability Statute.

Defendants contend that they play no role in enforcing sections (A), (B) and (C)(1) of the Strict Liability Statute, and that the *Ex Parte Young* exception does not apply to Plaintiffs' challenge to those provisions.[1]  *See* La. Rev. Stat. Ann. §

---

[1] To the extent that Defendants' Eleventh Amendment argument might be construed as an attack on Plaintiffs' standing to challenge the entire Strict Liability Statute, that attack must fail for the same reasons as the Eleventh Amendment argument: Defendants have relied on the Strict Liability Statute as a whole in denying Plaintiffs coverage under the Medical Malpractice Act for Ms. Prudhome's claim and all other abortion-related claims. In addition, even if Defendants were enforcing only section (C)(2) of the Strict Liability Statute, La. Rev. Stat. Ann. § 9:2800.12(C)(2), Plaintiffs would still have standing to seek relief against the entire Statute because section (C)(2) is not severable. Under Louisiana law, severability is a function of legislative intent; if severing one provision of a statute would cause the statute to operate in a manner that is contrary to the intent of the legislature, then severance is impermissible. *See United Transportation Union v. Foster*, 205 F.3d 851, 861 (5th Cir. 2000). If Section (C)(2) were severed from the Strict Liability Statute, then the Medical Malpractice Act would be applicable to claims brought under the Strict Liability Statute; physicians would have the option of self-insuring through the Fund for strict liability claims; strict liability claims against qualified health care providers would be subject to a $500,000 overall cap on damages and a $100,000 cap on a provider's personal liability; and a medical review panel would have to evaluate strict liability claims asserted against qualified health care providers before the claimant could file a lawsuit. *See* La. Rev. Stat. Ann. § 40:1299.41-1299.49. Undoubtedly, those outcomes are contrary to the intent of the legislature that enacted the Strict Liability Statute. Accordingly, section (C)(2) is not severable and Plaintiffs have standing to seek relief against the entire Strict Liability Statute.

2

9:2800.12(A), (B), (C)(1). Defendants' contention fails because the Oversight Board has applied the entire Strict Liability Statute in denying Plaintiffs coverage for Ms. Prudhome's claim and all other medical malpractice claims related to abortion.

It is beyond dispute that Defendants have interpreted and applied section (C)(2) of the Strict Liability Statute, La. Rev. Stat. Ann. § 9:2800.12(C)(2), in carrying out their "gatekeeping function" with respect to abortion-related malpractice claims. *See* Defs.' Mem. at 10, Record Document No. 27-1, Record Excerpts Tab No. 15. They have also plainly relied on the remaining sections of the Statute in defining the scope of the exclusion contained in (C)(2). This is evident from Defendants' actions against Plaintiffs. Section (C)(2), by its terms, refers only to claims brought under the Strict Liability Statute. La. Rev. Stat. Ann. § 9:2800.12(C)(2) ("The laws governing medical malpractice or limitations of liability thereof provided in Title 40 of the Louisiana Revised Statutes of 1950 are not applicable to this Section."). Yet, the Oversight Board applied the Strict Liability Statute to preclude the application of the Medical Malpractice Act to Ms. Prudhome's request for a medical review panel despite the fact that Ms. Prudhome's request was based on a traditional claim of "medical negligence," not on any claim of liability under the Strict Liability Statute. Letter from Sandra M. Williams to Jerry Luke LeBlanc (June 26, 2007), Exhibit B to First Amended

3

Complaint, Record Document No. 14-1, Record Excerpts Tab. No. 6. The Oversight Board based this decision on its position that the new liability regime created by the Strict Liability Statute replaced the medical malpractice regime for all claims related to abortions. See Letter from David A. Woolridge to Stephanie Toti (Nov. 7, 2007) [hereinafter "Woolridge Letter"], Exhibit E to First Amended Complaint, Record Document No. 14-1, Record Excerpts Tab. No. 9. This position necessarily involves Defendants' interpretation and application not only of section (C)(2), but of the whole Statute, which creates an entirely new liability scheme by: creating a new cause of action that contains no fault requirement; defining the types of damages awardable under the cause of action; delineating the effect of informed consent on the damages to be awarded; and excluding the scheme from the protections of the Medical Malpractice Act. *See* La. Rev. Stat. Ann. § 9:2800.12. Defendants' reliance on the whole liability scheme in the exercise of its "gatekeeping function" constitutes sufficient enforcement connection for purposes of *Ex Parte Young*. *See Ex parte Young*, 209 U.S. at 157.

### C. Defendants Mischaracterize the Relevant Eleventh Amendment Jurisprudence.

The proper test for whether a Defendant has sufficient connection with enforcement of a state statute to warrant an exception to Eleventh Amendment immunity is the test set forth in *Ex parte Young*:

4

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act . . . .
>
> It has not, however, been held that it was necessary that such duty should be declared in the same act which is to be enforced. . . . The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.

*Ex parte Young*, 209 U.S. at 157.  Defendants' contention that the court must apply a "special relation" test, which mandates a heightened level of connection beyond that described in *Ex parte Young*, is is wrong and wholly unsupported by controlling authority.

Defendants' reliance on *Okpalobi v. Foster* to support their contention is misplaced.  *See Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (*en banc*).  The *en banc* court in *Okpalobi* made no holding on the Eleventh Amendment issue, having equally divided on that matter.  Seven members of the Court adopted Judge Jolly's Eleventh Amendment analysis and seven members did not.  *See Okpalobi*, 244 F.3d at 437 n.6 (Benavides, J., concurring in part and dissenting in part) ("As Judge Jolly's Eleventh Amendment conclusion has not received the votes of a majority of the sitting en banc court, it is not controlling authority for future Eleventh Amendment questions in this Circuit."); *id.* at 429 n.1 (Higginbotham, J., concurring) ("The opinion's treatment of *Ex parte Young* and the Eleventh

5

Amendment is not supported by a majority of the court."); *id.* at 441 (Parker, J., dissenting) ("Judge Jolly's attempt to excessively narrow *Ex parte Young's* scope garners only a plurality of this court, and therefore, to use his language, it 'is not binding authority to any.'").    Accordingly, the decision does not constitute controlling authority with respect to the Eleventh Amendment issue.    *See United States v. Ferguson*, 211 F.3d 878, 885 (5th Cir. 2000) (noting that the opinion of an equally-divided *en banc* court does not disturb the prior precedent of the Circuit).

Even if the Court were to apply the "special relation" test advocated by Defendants, Defendants would not be entitled to Eleventh Amendment immunity. Defendants admit to performing a "gatekeeping function" under the Strict Liability Statute.  Defs.' Mem. at 10, Record Document No. 27-1, Record Excerpts Tab No. 15.  Based on the Statute, they have excluded Plaintiffs from benefits to which they would otherwise be entitled.  *See* Woolridge Letter, Exhibit E to First Amended Complaint, Record Document No. 14-1, Record Excerpts Tab. No. 9; Thompson Emails, Record Document No. 49-17, Record Excerpts Tab. No. 13.  That level of connection with enforcement of the Strict Liability Statute is plainly sufficient to satisfy both the "some connection" test set forth in *Ex parte Young* and the "special relation" test advocated by Defendants.

## II.    Plaintiffs' Claims are not Moot.

A case is not moot unless the plaintiff is divested of all personal interest in

the result or the effect of the alleged violation is completely eradicated and the event will not occur again. *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998); *see also Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008). Contrary to Defendants' assertions, the Oversight Board's action in convening a medical review panel to review Ms. Prudhome's claims—four months after the commencement of this lawsuit—does not render Plaintiffs' claims against Defendants moot. This is true for two reasons: First, denial of Ms. Prudhome's panel request is not the only action by Defendants that has injured Plaintiffs. Second, it is well-settled that a defendant's voluntary cessation of a challenged practice does not render a lawsuit moot.

### A.    Plaintiffs Suffer Ongoing Injuries as a Result of Defendants' Actions Apart from the Denial of Ms. Prudhome's Panel Request.

Plaintiffs' injuries do not derive solely from a deprivation of coverage for Ms. Prudhome's medical malpractice claim; rather, they derive from the Oversight Board's asserted policy of denying coverage for any medical malpractice claim arising from the performance of an abortion, whether in the past or in the future. *See, e.g.*, Woolridge Letter, Exhibit E to First Amended Complaint, Record Document No. 14-1, Record Excerpts Tab. No. 9. Even if Ms. Prudhome's lawsuit is resolved without the imposition of liability, Plaintiffs are still harmed by the Oversight Board's policy and practice of denying them the benefits of the Medical

Malpractice Act, including Fund coverage, for abortion-related claims. The very reason that physicians purchase medical malpractice insurance—or, in this case, self-insure through the Fund—is to control the risk of medical malpractice liability so that they can make financial decisions accordingly. *See* Declaration of Patricia Born, Ph.D (Feb. 17, 2009) at ¶¶ 11, 13, Record Document No. 49-15. In the absence of relief by this Court, Dr. K.P. and Dr. D.B. will not know whether the Fund will cover them for future medical malpractice claims based on abortions they have performed or will perform. As a result, they will not know whether to continue paying into the Fund or to obtain alternative coverage. Likewise, they will not know whether they can rely on the benefits that derive from participation in the Fund, including limitations on liability.

In addition, subsequent to the convening of the medical review panel, Defendants informed Hope Medical, through its insurance agent, that, pursuant to the Strict Liability Statute, the Fund does not cover claims arising from abortion. Thompson Emails, Record Document No. 49-17, Record Excerpts Tab. No. 13. As a result, Hope Medical was unable to avail itself or a physician it was training at the time of the benefits derived from Fund enrollment. Deposition of John Thompson (Dec. 15, 2008) at 37:8-20, Record Document No. 49-17, Record Excerpts Tab. No. 12. The Oversight Board's exclusion of abortion-related claims from the benefits of the Medical Malpractice Act injures Hope Medical both by

8

denying it benefits available to other health care providers and by making it harder for Hope Medical to recruit and retain physicians willing to perform abortions.

These injuries would be redressed by the relief sought by Plaintiffs in this lawsuit, namely:  a declaratory judgment that the Strict Liability Statute, as applied by Defendants to Dr. K.P., Dr. D.B. and other physicians enrolled in the Fund who currently face or will face medical malpractice claims related to abortion, violates the rights of Plaintiffs and their patients under the Fourteenth Amendment to the United States Constitution and is void and of no effect; and/or a permanent injunction restraining Defendants from enforcing, applying, or relying upon the Strict Liability Statute in making any determination about whether a claim presented to the Oversight Board is governed by the Medical Malpractice Act.  *See* First Amended Complaint at ¶¶ 36-37, Record Document No. 14, Record Excerpts Tab No. 5.  As a result, Plaintiffs claims are not moot.  *See Dailey*, 141 F.3d at 227 (explaining that the availability of even partial relief is enough to prevent mootness).

### B.     Voluntary Cessation of a Challenged Practice Does not Render a Lawsuit Moot.

The law is clear that voluntary cessation of a challenged practice during the pendency of a lawsuit does not render the lawsuit moot unless it is absolutely clear that the defendants cannot resume the challenged practice.  *See Parents Involved in*

*Community Schools v. Seattle School District No. 1*, 551 U.S. 701, 719 (2007);
*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S.
167, 189-90 (2000).   In *Parents Involved in Community Schools*, the plaintiffs
challenged a race-based school admissions policy.   One of the school district
defendants argued that the case was moot because the school district had stopped
enforcing the challenged race-based admissions policy after the litigation had
commenced.   *Parents Involved in Community Schools,* 551 U.S. at 718-19.   The
Court rejected that argument because it found that the school district would be free
to reinstate the challenged policy if the plaintiffs' lawsuit were dismissed.   *Id*.
("[T]he district vigorously defends the constitutionality of its race-based program,
and nowhere suggests that if this litigation is resolved in its favor it will not resume
using race to assign students.").   Similarly, in *Friends of the Earth*, the plaintiffs
brought a citizen suit against a polluter to enforce provisions of the Clean Water
Act.  *Friends of the Earth*, 528 U.S. at 173.   The court of appeals had held that the
case was moot because, following the commencement of the lawsuit, the defendant
had come into compliance with the Act.   *Id*. at 173-74.   The Supreme Court
reversed that decision, holding that the defendant's voluntary conduct could not
serve to defeat the Court's jurisdiction once that jurisdiction had been established
at the start of the lawsuit.   It stated:

The only conceivable basis for a finding of mootness in this case is

10

Laidlaw's voluntary conduct—either its achievement by August 1992 of substantial compliance with its NPDES permit or its more recent shutdown of the Roebuck facility. It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by a defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Id.* at 189 (citations and internal quotation marks omitted).

Here, for seven months after Defendants denied Ms. Prudhome's panel request, Dr. K.P. and her attorneys continually asked Defendants to reverse their decision and recognize her as qualified for purposes of Ms. Prudhome's claims, and for seven months Defendants continually refused, adhering to their stated enforcement policy. *See* Declaration of K.P., M.D. (Feb. 18, 2009) at ¶¶ 13-18, Record Document No. 49-8. It was not until four months after Plaintiffs filed this lawsuit that Defendants agreed to convene a medical review panel to evaluate Ms. Prudhome's claims (while simultaneously reserving the right to deny payment of those claims). Letter from Cheryl Jackson to Sandra M. Williams (Mar. 12, 2008), Exhibit N to Declaration of K.P., M.D. (Feb. 18, 2009), Record Document No. 49-

11

8, Record Excerpts Tab. No. 10. But, they did not repudiate their enforcement policy concerning the Strict Liability Statute. To the contrary, throughout this litigation, Defendants have repeatedly affirmed that policy. *See, e.g.*, Thompson Emails, Record Document No. 49-17, Record Excerpts Tab. No. 13; Deposition of Lorraine LeBlanc (Oct. 1, 2008) [hereinafter "LeBlanc Dep."] at 155:1-25, Record Document No. 49-15, Record Excerpts Tab. No. 11.

If the Court were to dismiss this case, Defendants would be free to continue enforcing the Strict Liability Statute against Plaintiffs by denying them Fund coverage and the accompanying benefits for abortion-related claims.[2] Defendants have not met the "heavy burden" of proving that they could not do so. *Friends of the Earth*, 528 U.S. at 189. Indeed, they have not even alleged that they would not do so. As a result, Defendants' voluntary agreement to convene a medical review panel to evaluate Ms. Prudhome's claims of malpractice did not render Plaintiffs' claims moot. *See Parents Involved in Community* Schools, 551 U.S. at 718-19; *Friends of the Earth*, 528 U.S. at 189-90.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' principal brief, Plaintiffs

---

[2] When asked to explain the effect of the reservation of rights with respect to Ms. Prudhome's claim, Defendant LeBlanc testified that: "It means that the PCF retains their right to challenge coverage down the road or at a later date or during the process of this panel." LeBlanc Dep. at 176:16-20, Record Document No. 49-15, Record Excerpts Tab. No. 11.

12

respectfully ask this Court to reverse the judgment of the district court.

Dated:  February 11, 2010

                                        Respectfully submitted,


                                        s/Stephanie Toti
                                        Stephanie Toti
                                        Center for Reproductive Rights
                                        120 Wall Street, 14th Floor
                                        New York, NY 10005
                                        (917) 637-3600
                                        stoti@reprorights.org

                                        William E. Rittenberg
                                        Rittenberg, Samuel & Phillips, LLC
                                        715 Girod Street
                                        New Orleans, LA 70130
                                        (504) 524-5555
                                        rittenberg@rittenbergsamuel.com

                                        **Attorneys for Plaintiffs-Appellants**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on February 11, 2010, a true and correct copy of the Reply Brief of Plaintiffs-Appellants was sent by United States Post Office Express Mail to the following individuals:

**Carlton Jones, III**
**David A. Woolridge, Jr.**
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809-7679

**Angelique Duhon Freel**
Louisiana Department of Justice, Civil Division
P.O. Box 94005
Baton Rouge, LA 70804-9005

Dated:  February 11, 2010

s/Stephanie Toti
Stephanie Toti
The Center for Reproductive Rights
120 Wall Street, 14th Floor
New York, NY 10005
(917) 637-3600

14